## 70071. THOMPSON v. THE STATE.
### (334 SE2d 312)

BEASLEY, Judge.

Thompson appeals from the conviction and sentence in May 1984 for aggravated assault and driving under the influence of alcohol on September 23, 1983. His motion for new trial on the general grounds was denied May 16.

The evidence was in sharp conflict. From the State's witness came the following account. Jerry Heard, an off-duty police officer with the City of Cumming, was driving his wife's station wagon accompanied by his wife and four children. As they approached the intersection of Georgia Highways 20 and 400 outside the city limits of Cumming, the defendant, who was exiting Georgia 400 and entering Georgia 20, pulled his truck in front of the Heard vehicle. Heard swerved to avoid a collision, blew his horn, and passed defendant, who then drove his truck in such close proximity to the station wagon that it was forced off the road and onto the median. The truck stopped in front of the station wagon, blocking its way. Both parties exited their vehicles and started toward one another. Heard held his police badge high in his left hand and his police revolver in his right hand. Despite Heard's announcement that he was a police officer, defendant advanced and struck the badge from his hand. Heard tossed his revolver to his wife and simultaneously the defendant either struck or shoved Heard causing him to fall. Heard and the defendant fought and struggled on the ground for some time. At one point Heard's wife struck defendant on the head with a flashlight but he continued the conflict. Finally, bystanders subdued defendant and Heard's wife handcuffed him. About this time a Forsyth County Deputy Sheriff arrived, followed by other police officers, and defendant was taken to jail.

An auto-intoximeter test administered at the sheriff's office registered .21. Defendant demanded a blood test, was told the hospital's charge would be $65, and said he had that amount. As they were leaving for the hospital, defendant spied Heard and attempted another altercation. When they got to the hospital and the receptionist repeated the cost defendant stated he did not have $65 in cash and demanded that the county pay for the test. The officers took defendant back to jail, where he was released on bond several hours later.

1. (a) Appellant contends (fifth enumeration of error) that the trial court erred in overruling his motion for directed verdict. "The

statutory standard for application by a trial court to decide a motion for a directed verdit of acquittal is '[w]here there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal' . . ." the court may so direct a verdict. *Maddox v. State,* 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984); OCGA § 17-9-1 (a). Even defendant admits that this is the law, quoting *Merino v. State,* 230 Ga. 604, 605 (1) (198 SE2d 311) (1973). It is not error to refuse to direct a verdict when, "viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright v. State,* 253 Ga. 1, 3 (1) (316 SE2d 445) (1984); *Lee v. State,* 247 Ga. 411, 412 (6) (276 SE2d 590) (1981).

Applying these principles to the evidence, there was no error in denying defendant's motion for a directed verdict.

(b) Defendant contends in addition that the State failed to prove venue. At the time this issue was raised at trial, the State, while not admitting the element had not been established, moved to reopen its case. The court allowed it over defendant's objection, but reprimanded the State. Defendant did not contest the fact that the incident occurred in Forsyth County.

It is within the trial court's discretionary power to reopen a case and permit the introduction of further evidence even though the testimony is not in rebuttal of evidence offered by defendant. *Britten v. State,* 221 Ga. 97, 101 (4) (143 SE2d 176) (1965); *Davis v. State,* 127 Ga. App. 76, 80 (3) (192 SE2d 538) (1972); *Lemons v. State,* 167 Ga. App. 863, 864 (3) (307 SE2d 747) (1983). No abuse is shown, and venue was unequivocally shown.

2. (a) Appellant challenges denial of his motion to suppress the intoximeter test results. Several bases are urged, first, that his warrantless arrest was illegal because he was arrested by a non-officer before the deputy sheriff arrived and, if not then under arrest, his arrest by the deputy sheriff was for a misdemeanor (DUI) not committed in the arresting officer's presence. If we consider off-duty police officer Heard as a private person at the time of the incident, as defendant is want to do, his detention of defendant, aided by his wife's handcuffing of defendant, constituted a valid arrest. As quoted in appellant's brief, the law authorized a private person to arrest if the offense is committed in his presence. OCGA § 17-4-60. All of the activities for which defendant was tried were in Heard's presence; they actually involved him. He then merely turned the matter over to the deputy sheriff when he arrived, as required by OCGA § 17-4-61 (a), and the latter formally arrested defendant on the initial charge of driving under the influence. Although OCGA § 17-4-62 requires the person effecting a warrantless arrest to take him to a judicial officer

"without delay" so that the basis for continuing the detention of the arrestee may be scrutinized, and if this is not done the arrestee must be released within forty-eight hours, appellant's complaint here is meritless. He was released within five or six hours, and in at least part of that period, the law enforcement officers were occupied with intoxication-testing efforts as authorized by law. OCGA §§ 40-5-55 (a); 40-6-392.

(b) As to appellant's second assertion, this court has already determined that the fact that rules have been promulgated by the Department of Public Safety rather than the Division of Forensic Sciences of the Georgia Bureau of Investigation does not serve to invalidate the rules regarding the implied consent law. *State v. Holton*, 173 Ga. App. 241 (326 SE2d 235) (1985).

(c) Failure of the deputy sheriff to record on the uniform citation certain information pursuant to Department of Public Safety Rule 570-9-0.12-.06 did not make the test results inadmissible. Obviously, the purpose of the rules of recordation of the Department of Public Safety are administrative, to facilitate the processing of the case and provide easy access to this information needed by those involved, including defendant. Hence, he was given that information elsewhere, in several forms, so he has no excuse to complain. While non-compliance might subject the officer to internal disapproval, and corrective measures, defendant shows no harm to himself by the omission. *Burnette v. State*, 165 Ga. App. 768 (302 SE2d 621) (1983). Thus, there was no reason to exclude the test results.

(d) It is contended that the police officers breached a duty owed to defendant as set out in OCGA § 40-6-392 (a) (3) and (4) by not insuring that he obtained a blood test.

When defendant was advised that he had a right to an independent test and indicated he wanted one and could pay for it, the officers took him to the Forsyth County Hospital. When told by the receptionist there that it would have to be paid for in advance, defendant refused and insisted that the county should pay. So the officers returned with him to the jail.

The law does not require the government to pay for two tests. The second is the driver's option, so that he may challenge the results of the officers-requested test. The cost of the optional test, to be administered by a qualified person of the driver's own choosing, must be borne by the driver, at least where he is able to pay, as defendant here said he was. The facts show that defendant was afforded the opportunity to obtain an independent test of his blood, and that is all that is required. *Grizzle v. State*, 153 Ga. App. 364 (265 SE2d 324) (1980).

"Where a defendant makes no arrangements to secure an independent test, the mere fact that it was not made 'fails to disclose any

reason to suppress the evidence merely because the defendant was unable to obtain a test of his own choosing.' " *Harper v. State*, 164 Ga. App. 230 (1) (296 SE2d 782) (1982). Accord *State v. Laycock*, 151 Ga. App. 145, 147 (259 SE2d 150) (1979).

No error was committed in denying the motion to suppress.

3. Appellant enumerates as error the denial of the motion to quash count two charging him with driving under the influence. He claims as ground that his arrest was illegal because it was not authorized to be accomplished by citation pursuant to OCGA § 17-4-23 since the crime was not committed in the deputy sheriff's presence and the latter did not receive the information from a law enforcement officer but only from an off-duty policeman. The simple answer is that the arrest was effected by the citizen, taking defendant's view of it, before the deputy sheriff got to the scene, pursuant to OCGA §§ 17-4-60 and 61. It was not accomplished by following OCGA § 17-4-23 (a): "A law enforcement officer may arrest a person accused of violating any law . . . governing the operation . . . of motor vehicles *by* the issuance of a citation, . . ." (Emphasis supplied.) It did not serve as a basis for the arrest, in lieu of a warrant.

The citation thus became merely a means of recording the arrest, informing defendant of the charge, and advising him when and where to appear in court, which are other functions it serves. It later became inoperable as to the latter, of course, because an indictment was issued, and the trial proceeded on the indictment and not on the citation.

Even if the arrest had been unlawfully accomplished, it would not here be grounds for quashing the indictment. As said in *Thompson v. State*, 155 Ga. App. 101, 104 (3) (270 SE2d 313) (1980): "In any event, 'where, as here, the defendant has been indicted and convicted, an illegal arrest is not in and of itself a ground of reversal. [Cit.]' *Anderson v. State*, 152 Ga. App. 268 (1) (262 SE2d 560) (1979)."

The sanction for an illegal or unconstitutional arrest is not suppression of the indictment, since the illegality of an arrest neither bars prosecution or affects a conviction. *Gibbs v. State*, 132 Ga. App. 886, 887 (2) (209 SE2d 691) (1974); *Lackey v. State*, 246 Ga. 331, 333 (2) (291 SE2d 478) (1980).

4. Defendant sought discovery of written scientific reports under OCGA § 17-7-211 and was furnished with a copy of the test result printouts but not of the operational check-list card used by the operator as a guide to prepare the machine and filled out by him at that time. It is argued that it was error to allow this card in evidence.

OCGA § 17-7-211 (b) requires production on request of "any written scientific reports in the possession of the prosecution which will be introduced in whole or in part . . . in [the prosecution's] case-in-chief or in rebuttal." While "blood alcohol test *results*" are ex-

pressly included as a species within the term "written scientific reports," OCGA § 17-7-211 (a), the definition embraces any "similar type reports that would be used as scientific evidence by the prosecution. . . ." Thus it clearly makes discoverable in advance of trial, for the purpose of trial preparation and to prevent surprise, those scientific reports which the state contemplates introducing as evidence. See *Hartley v. State*, 159 Ga. App. 157, 160 (282 SE2d 684) (1981).

Ordinarily the papers generated in the course of the scientific investigation or examination will not be introduced. They are only the inconclusive documentation of work in progress. They do not inculpate defendant. What will be introduced is the end result, the incriminating conclusion. Thus, interim papers are not discoverable, for they are merely internal documents of the examining agency and products of the examiner's work as it is being undertaken. *Walker v. State*, 168 Ga. App. 130, 131 (3) (308 SE2d 404) (1983); *Williams v. State*, 251 Ga. 749, 753 (3) (b) (312 SE2d 40) (1983); *Hartley v. State*, supra at 158-160.

Here, however, the State did introduce the check-list card along with the test results, and it was admitted over objections. The State has the burden to show it complied with the request. *Henson v. State*, 168 Ga. App. 210, 211 (1) (308 SE2d 555) (1983). If it was a "written scientific report" as contemplated by the statute, it should have been excluded and its allowance would be reversible error, following the sound theory of *Garner v. State*, 159 Ga. App. 244 (1) (282 SE2d 909) (1981). Although that case dealt with disclosure of defendant's statements pursuant to now OCGA § 17-7-210, the same principles would apply.

The partially-completed and somewhat duplicative check-list card which Thompson did not get in advance is not a "written scientific report" subject to production in the circumstances of this case. While it does contain the test results, that was simply a hand-written recordation of the printout results which had been furnished to defendant. As in *Henson v. State*, supra, one provision is sufficient. It does record the date, time, and machine serial number, but those factors of identification are duplicative of what is also contained on the printout. The rest merely shows some of the steps taken by the operator, the witness, in conducting the test. This portion, like the graphs in *Williams v. State*, supra, did not constitute a "scientific report" because this portion did not " 'include the examiner's findings based on scientific analysis or his or her opinion.' " *Williams*, supra at 754.

Thus, the court did not err in allowing the card in evidence.

5. Error is asserted on the failure to admit on defendant's behalf three copies of additional printouts of the intoximeter test result. A printout had already been tendered by the State and admitted in evidence. The additional printouts were identical to the State's exhibit

in showing the time that the intoximeter was tested (17:14) and the time that the actual test was run (17:18). They showed that they differed only as to the times at which the printouts were each made. The State's exhibit was made at 17:20; defendant's exhibits were made at 17:21, 17:22, and 17:36. The operator testified that the various printouts were made so as to provide copies of the reading for defendant, the arresting officer, the jailer, the court, and for attachment to the check-list card. Defendant offered them to prove that they and therefore the State's exhibit, did not relate to his test because the radio log indicated that both he and the operator left with the deputy to go to Forsyth County Hospital at 17:20 and were involved during this period in that trip.

The evidence was not in conflict that the machine was tested at 17:14, the test was conducted at 17:18, defendant was transported to the hospital at 17:20 by the operator and the deputy and then a few minutes later back to the jail. The operator testified, and defendant denied, that he was told the results at the time and that he was given that night a copy of the printout showing that the blood alcohol content was .21, which result is also what the operator testified to. No evidence contradicted these times or that the serial printouts were made at the times shown thereon. These additional printouts[1] merely tended to show that either the operator's recollection was in error about making the printouts and someone other than he punched the button for printouts and caused the machine to make them or that the timing on the radio log was imprecise. In any event, these were issues not relevant to whether defendant was accurately tested as being under the influence. The exhibits, even if they had been admitted, would not tend to show that the test recorded was not the one taken by defendant. Thus, since their admission would not have aided defendant on a material issue, their exclusion did not harm him. *Mahone v. State*, 120 Ga. App. 234, 235 (3) (170 SE2d 48) (1969); *Campbell v. State*, 149 Ga. App. 299, 300 (2) (254 SE2d 389) (1979).

6. Finally, appellant urges that it was error to hear his motion for new trial, which was based on the general grounds, at the time a rule nisi was presented to it. That occurred on the same day as sentencing, within a few days of conclusion of the trial. It is not error for the trial court to hear a motion for new trial immediately after it is filed and prior to the preparation of the transcript and proceedings, where the evidence is fresh in the court's mind. *McClure v. State*, 163 Ga. App. 236 (2) (293 SE2d 496) (1982). Even if the court erred, which we do not find, it would not be reversible error. As we concluded in Division

---

[1] Assuming the exhibits were in fact Xerox copies of the printouts which the operator testified he made (they were not objected to as the best evidence).

1, the evidence supported the verdict, so defendant would not be entitled to a new trial.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 9, 1985 —
REHEARING DENIED JULY 31, 1985 — 

*Darryl R. Vandeford, for appellant.*

*Rafe Banks III, District Attorney, Wallace W. Rogers, Jr., Garry T. Moss, Assistant District Attorneys, for appellee.*