## A91A1226. FOWLER v. THE STATE.
### (411 SE2d 335)

ANDREWS, Judge.

Fowler was tried by a jury and convicted of trafficking in cocaine, possession of cocaine and possession of a firearm during the commission of a felony.

1. In his first enumeration of error, Fowler argues that the trial court erred in overruling his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, the evidence is construed most favorably to uphold the trial court's findings and judgment and the

trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

Viewing the evidence here in this favorable light, the facts were that a team of undercover officers planned to buy cocaine from a man named Grant Purdue on October 13, 1989. Prior to the drug transaction, the investigating detectives were certain only that Purdue would sell the cocaine, though the team was aware that an "older white man" was involved in the drug business and might be present for the transaction. The detectives arranged to meet Purdue on a designated dirt road leading to a public dumpster, approximately 80 yards off the main road at 9:30 a.m. to exchange the drugs and money.

At 9:30 a.m., Purdue appeared in his car on the designated dirt road, followed closely by Fowler, a 69-year-old white man. Purdue drove to the meeting place near the dumpster and got out of his car. Meanwhile, Fowler parked his car on the edge of the dirt and paved roads, so that his car partially blocked the roadway. Fowler got out of his car and watched the ensuing transaction between Purdue and the detectives.

After Purdue pulled the cocaine from under the hood of his car, the undercover officers arrested him. As this happened, Fowler began running to his car and one of the detectives chased him. The detective identified himself and yelled to Fowler to stop, but Fowler ignored the officer's request. Fowler got into his vehicle and cranked the engine. At that point the detective ran alongside Fowler's vehicle and again stated: "sheriff's department, shut your car off, get out of your car." In response to this command, Fowler turned the ignition off and got out of his vehicle as the officer had directed him to do.

After Fowler was out of the car, the detective instructed him to put his hands on the back of the car at which time he observed that both of Fowler's back pockets appeared to have large objects in them. In the ensuing search, a gun and a pocketknife, on which was residue from cocaine, were found.

Fowler claims that the search was constitutionally impermissible in that the requirements for a stop and frisk were not met here under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The State argues that the search was constitutionally permissible since it was made pursuant to a lawful arrest, an argument with which we agree.

Under OCGA § 17-4-20 (a): "[a]n arrest for a crime may be made by a law enforcement officer . . . without a warrant if the offense is committed in his presence or within his immediate knowledge; if the offender is endeavoring to escape . . . or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant." "The constitutional validity of an arrest without a warrant

depends upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." (Citations and punctuation omitted.) *Manzione v. State*, 194 Ga. App. 227, 228-229 (390 SE2d 121) (1990).

Here, the evidence indicated that based on a previous conversation with Purdue, the officers were aware of "an older white man's" involvement in the drug transaction. Fowler's arrival with Purdue at the hidden drug transaction location affirmed the information that an older white man was involved in the drug deal. Furthermore, Fowler positioned his vehicle so as to partially block any exit that the officers may have had and stood in the middle of the dirt road where he could act as a lookout. These facts in conjunction with Fowler's attempt to leave the scene at the time of Purdue's arrest supported the trial court's finding that the police had probable cause on which to arrest him. See *Scott v. State*, 193 Ga. App. 74 (387 SE2d 31) (1989); *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989); *Banks v. State*, 187 Ga. App. 280, 282 (370 SE2d 38) (1988). Because probable cause existed for Fowler's arrest, we need not address the issue of whether the search would have been permissible had the circumstances warranted merely a limited *Terry*-type detention. See *Scott*, supra at 75; see also *Paxton v. State*, 160 Ga. App. 19 (1) (285 SE2d 741) (1981).

2. In his second enumeration of error, Fowler contends that the trial court erred in failing to grant his motion for a directed verdict of acquittal. " 'The statutory standard for application by a trial court to decide a motion for a directed verdict of acquittal is "(w)here there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal" . . .' the court may so direct a verdict. *Maddox v. State*, 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984); OCGA § 17-9-1 (a). . . . It is not error to refuse to direct a verdict when, 'viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Wright v. State*, 253 Ga. 1, 3 (1) (316 SE2d 445) (1984); *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590) (1981)." *Thompson v. State*, 175 Ga. App. 645, 646 (1) (334 SE2d 312) (1985). Viewing the evidence with these principles in mind, we find that the trial court did not err in denying the motion for directed verdict. Further, we find that there was ample evidence for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Fowler argues in his third enumeration of error that the trial court erred by questioning one of the State witnesses regarding his

experience in fingerprinting analysis in that the judge appeared to bolster the state's case and that the series of questioning infringed upon his cross-examination of the same witness. We find no merit in this enumeration.

First, we find no evidence that the court's questioning curtailed Fowler's cross-examination of the witness. Furthermore, a judge has the right to propound questions to develop the truth of the case and the extent of such examination is a matter within the trial court's discretion. *Dixon v. State*, 196 Ga. App. 15 (10) (b) (395 SE2d 577) (1990). We have read the excerpt carefully and find no expressions or intimations of opinion regarding the evidence in the questions. They were addressed to relevant issues with a view of assisting the jury to ascertain the truth. *Dixon*, supra at 15.

4. Finally, Fowler contends that the trial court erred in failing to grant his motion for a mistrial based upon improper prosecutorial closing argument. During such argument, Fowler objected and moved for a mistrial. The judge sustained the objection and gave curative instructions to the jury, but denied the motion. Fowler argues that the instructions were inadequate to undo the harm created by the argument and that counsel should have been rebuked and a new trial granted.

The portion of the State's argument to which Fowler objects was during the prosecutor's explanation of Purdue's change in testimony at trial from an earlier statement in which he had implicated Fowler in the drug transaction. The State's attorney argued: "Let me get back to Grant Purdue's motive [for changing his account of Fowler's involvement at trial]. So do you think for a second, Grant Purdue would get up here, the runner, and finger the big guy and say that's my man, that's the guy I got the cocaine from. No, because the consequences are a lot worse if you finger the big guy than if you just said I want to go to jail. You turn in the Elmer Fowlers and the Elmer Fowlers are going to get you and they're not going to do it through the legal system. They're going to do it on their own."

First, Fowler's argument that the court's failure to rebuke counsel constitutes error is misplaced, since the court's subsequent instruction to the jury to disregard the improper remarks amounted to a rebuke of counsel. See *Martin v. State*, 196 Ga. App. 145 (395 SE2d 391) (1990).

Fowler argues that a mistrial pursuant to OCGA § 17-8-75 was demanded since the curative instruction did not suffice to remove the prejudice created by the improper argument. We do not agree. "Counsel is permitted, in the sound discretion of the court, to argue all reasonable inferences and deductions which may be drawn from the evidence. . . ." (Citations and punctuation omitted.) *Davis v. State*, 178 Ga. App. 357, 359 (343 SE2d 140) (1986). Although Fowler

did not testify, the State's argument was an attempt to explain Purdue's conflicting statements. Nevertheless, assuming without deciding that such argument was improper, careful scrutiny of the transcript before us indicates the court's curative instructions were sufficient to remove any prejudicial effect of the argument and the court did not err in denying the motion for mistrial.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 7, 1991.

*Bruce S. Harvey*, for appellant.

*William G. Hamrick, Jr., District Attorney, Monique F. Kirby, Peter J. Skandalakis, Assistant District Attorneys*, for appellee.