## A95A2002. JORDAN et al. v. THE STATE.
(470 SE2d 242)

ANDREWS, Judge.

Elaine Jordan and Jack McGhee-Lane appeal from a jury verdict finding them guilty on three counts of theft of services and three counts of issuing bad checks. The evidence at trial, viewed in the light most favorable to the jury's verdict, was as follows.

The event from which the charges arose was "Indian Fest '93," put on by Jordan and McGhee-Lane on June 26 and 27, 1993, at the Gilmer County Fairgrounds. The charges relate to three agreements defendants made for services to be provided at Indian Fest by Paul Eddy, John Standingdeer, and Charles Irvin. The one-page contract with Paul Eddy provided he would be responsible for dancing, story-telling, blessing and setting up the arena, providing lists of dancers and drummers, giving autographs and talking to the children, being in the parade, checking on vendors, and overseeing arena protocol. The contract stated Eddy would be paid $3,500 for these services, with a $500 bonus upon "completion of a successful festival."

John Standingdeer's contract was essentially the same, with the exception of responsibility for providing lists of dancers and drummers, and he was to be paid $3,000 for Saturday and Sunday, with a $500 bonus if the festival was successful. Both Eddy and Standingdeer were paid $1,000 before the festival, with the balance due after the event. Charles Irvin verbally agreed to provide bleachers for the festival for $1,000, to be paid after the event.

On Sunday, June 27, after the festival closed, defendants wrote Eddy a check for $2,500, Standingdeer a check for $2,000, and Irvin a check for $1,000. It is undisputed that, at the time they wrote the checks, defendants were aware there were insufficient funds in the account to cover the checks. Further, all three recipients of the checks sent defendants notice that the checks had been dishonored. Defendants never made good the checks or paid any of the money owed.

At trial, Eddy testified that he requested assurances from the defendants that the Native American performers and workers would be paid. He said he told them about other festivals where there was not enough money to pay everyone when it was over and advised them they needed to have between $17,000 and $19,000 available to them.

Eddy stated that defendants assured him this would be taken care of. When defendants gave him the $2,500 check for his services on Sunday after the festival, Eddy stated they told him the check would be good on Thursday.

John Standingdeer testified he specifically told defendants they could not count on making any profit, especially the first year, and asked how the dancers and workers were to be paid. He stated the defendants assured him the money was in the bank. Standingdeer admitted he was angry when he heard there were money problems but denied threatening Jordan in order to force her to write a check. He could not remember if he was asked to delay cashing the check.

Irvin testified he was not told to delay cashing the check, but he heard there were problems with insufficient funds. Irvin stated he was never told that payment for the bleachers was contingent on the outcome of the festival.

Defendant Jordan testified she told all three men at the close of the festival that there was not enough money to pay what was owed them. She claimed she wrote the checks because Standingdeer was very angry and was threatening her. But, Sheriff's Deputy Phillips, who was helping with security at the festival and was present when the workers came to get paid, testified that, although people were upset, no one made any physical threats and no one was in danger. Jordan admitted that Phillips asked her if she wanted him to do anything and she told him "it was under control." Jordan testified they had $10,000 set aside and made another $18,000 at the festival, for a total of $28,000. She also testified they had budgeted around $18,000 for expenses. When questioned as to why this was not enough to pay everyone, Jordan responded that expenses for the performers brought in for the event were more than expected.

1. Defendants contend the evidence was insufficient to support the verdict. After reviewing the record and in light of the testimony as outlined above, we find there was sufficient evidence to support the verdict of the jury.

Once a jury renders a guilty verdict, defendants on appeal no longer enjoy the presumption of innocence and the evidence must be viewed in the light most favorable to the verdict. *Gazaway v. State*, 207 Ga. App. 641, 642 (428 SE2d 659) (1993). "The weight of the evidence and credibility of witnesses are questions for the triers of fact, and this court passes on the sufficiency of the evidence, not its weight." (Citations and punctuation omitted.) *Johnson v. State*, 204 Ga. App. 277, 278 (3), 279 (419 SE2d 118) (1992). Accordingly, we find that a rational trier of fact could find from the evidence adduced at trial proof of appellants' guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Next, defendants contend the court erred in denying their spe-

cial demurrer to Counts 4, 5 and 6, charging theft of services. Defendants contend these counts are not set out with the sufficient certainty required by OCGA § 17-7-54.

Count 4 of the indictment charged, in pertinent part, as follows: "charge and accuse Jack McGee Lane and Elaine Jordan with the offense of THEFT OF SERVICES for that the said accused between June 1, 1993 and June 28, 1993, in the county aforesaid, did unlawfully then and there by deception and with the intent to avoid payment, accused did knowingly obtain services, accommodations, entertainment, and use of personal property for the function known as Indian Fest '93 from Charles Irvin, with a value exceeding $500.00, which was available only for compensation, contrary to the laws of this State, the good order, peace and dignity thereof." Counts 5 and 6 are identical, with the exception that the name of Paul Eddy is used in Count 5, and the name John Standingdeer in Count 6.

We find no error in the trial court's denial of defendants' special demurrer. "[T]he true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." (Citation and punctuation omitted.) *State v. Black*, 149 Ga. App. 389, 390 (254 SE2d 506) (1979). While each count was not specifically individualized to each person named in the count, we find they contained the elements of the offense charged and defendants cannot claim the charges were so insufficient that they were surprised by evidence introduced at trial or were unable to prepare a defense. *Hopper v. Hampton*, 244 Ga. 361, 362 (260 SE2d 73) (1979); *Carter v. State*, 155 Ga. App. 49, 50 (270 SE2d 233) (1980).

3. Defendants also claim that during the trial, the trial judge frequently interposed in the proceedings in such a way as to prejudice the defense, in violation of OCGA § 17-8-57. Defendants cite to one instance where the court admitted a piece of evidence over defendants' objection. However, defendants do not cite, and we do not find, any expression or opinion made by the trial judge in admitting this evidence which violates OCGA § 17-8-57. As to the other two instances cited by defendants, "the question of whether OCGA § 17-8-57 has been violated is not reached unless an objection or motion for mistrial is made." (Citations and punctuation omitted.) *Mathis v. State*, 194 Ga. App. 498, 499-500 (3) (391 SE2d 130) (1990). Here, neither was made. Further, we find the questions were addressed to relevant issues and were designed to assist the jury in ascertaining the truth. Id.

4. Defendants also object to the trial court's refusal to give their Request to Charge No. 16 and the court's decision to omit a sentence from their Request to Charge No. 15. The sentence omitted from No. 15 provided, "the State must in addition prove beyond a reasonable doubt that the Defendants secured such services through specific acts of deception." Defendants' Request to Charge No. 16 read: "[d]eception means deliberately giving false impression of an existing fact or past event. The mere promise to pay at some time in the future even a false promise of such performance is not an act of deception with regard to an existing fact or past event."

Specifically, defendants contend they were prejudiced because, without the requested charge, the jury would be confused and the legal concept of deception as an element that must be proved in a charge on theft of services would be lost. But, "[i]t is not necessary in considering a charge to assume a possible adverse construction, but a charge that is sufficiently clear to be understood by jurors of ordinary understanding is all that is required." (Citations and punctuation omitted.) *Brantley v. State*, 199 Ga. App. 623, 626 (9) (405 SE2d 533) (1991). Further, the trial court charged the applicable statutes on bad checks and theft of services and also charged "the State is required to prove beyond a reasonable doubt that the defendant or defendants, at the time they obtained the services, had a specific intent to avoid payment for such services." Accordingly, we find the jury charge as a whole substantially presented the issues in a way not likely to cause confusion to the jury. *Beck v. State*, 211 Ga. App. 125, 127 (438 SE2d 391) (1993). Thus, the trial court did not err in refusing to give defendants' requests to charge.

5. Lastly, defendants claim the trial court erred in denying defendants' motion for new trial without holding a hearing. The record shows that, after the sentencing, the judge took up defendants' motion for new trial, stating he would rule on it then since it was based on the general grounds and he remembered the facts and evidence at trial very well. Defendants' counsel then requested leave to file a revised motion for new trial and the court stated that it would look at the motion. The court discussed with defense counsel the exceptions to the jury charge, and defense counsel again requested the court to wait until the record was available before ruling on the motion for new trial. The judge reiterated that he remembered the evidence presented very well and overruled the amended motion for new trial.

When a motion for new trial is filed on the day of sentencing and prior to preparation of the transcript, it is not error for the trial court to hold the hearing immediately after the motion is filed and while the evidence is fresh in the court's mind. *Thompson v. State*, 175 Ga. App. 645, 650 (334 SE2d 312) (1985). Here, however, defendants contend this was not a "hearing" on the motion. Pretermitting the issue

of whether or not the court gave defendants' counsel the opportunity to be "heard" on his motion, we find the error, if any, was harmless in light of our ruling that the evidence was sufficient to support the verdict and defendants are not entitled to a new trial. *Thompson*, supra at 650-651.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 28, 1996 —
RECONSIDERATION DENIED MARCH 13, 1996.

*Gerald D. Hegstrom*, for appellants.

*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney*, for appellee.