71346. RAUTENBERG et al. v. THE STATE.
(342 SE2d 355)

McMurray, Presiding Judge.

Defendants Anthony Wayne Rautenberg and Donnie S. Thurmond were charged, via indictment, with the offense of theft by taking. It was alleged that on October 4, 1983, defendants "did unlawfully take one (1) air compressor with a Briggs & Stratton five (5) horse power engine with twin air tanks equipped with [wheelbarrow] handle and wheel, blue in color, two (2) aluminum five (5) foot step ladders, twenty (20) each 2 x 4 studs, forty (40) rolls of brown nine (9) pound insulation, size 3/8 inch by 25 feet and one half (1/2) box of 10 inch spiral spikes manufactured by Virginia Wire and Fabric Company, the property of Zachary Sandlin, with a value of one thousand two hundred ($1,200.00) dollars, with the intention of depriving said owner of said property . . ." Following a jury trial, defendants were convicted of the offense charged and they were sentenced to serve time in the penitentiary. Thereupon, defendants moved for a new trial. Their motion was overruled by the trial court and this appeal followed.

The following evidence was adduced upon the trial of the case: Mr. Zachary Sandlin, a construction worker, testified that on October 3, 1983, he was engaged in building a log house in Lincoln County, Georgia; that the house was being built on property which was adjacent to land upon which Mrs. Louise Revercomb, the mother of defendant Rautenberg, lived; that on the following morning (October 4, 1983), he discovered that various pieces of equipment were missing from the construction site, to wit: a gas air compressor (blue in color) with a Briggs & Stratton engine and twin tanks, wheelbarrow handles, and one wheel; two aluminum stepladders; 40 rolls of nine pound insulation; one-half box of spiral spikes; and approximately twenty 2 x 4 studs (boards). Mr. Sandlin further testified that he lawfully possessed the air compressor (he had borrowed it from another individual) and that he was the owner of the other items. He valued the property at more than $500.

Deputy Sheriff Edwin Bentley testified that early on the morning of October 4, 1983, at approximately 15 minutes to one, he observed a pick-up truck which had stopped in front of a store for a few minutes; that because he was investigating another theft, he ordered the truck to pull over, took out his flashlight, looked in the bed of the truck, and saw several items therein; that he momentarily spoke with the driver of the truck, defendant Thurmond; that he noticed a passenger

sleeping in the cab of the truck, but that he did not see the face of the passenger. The deputy testified further that he was suspicious about the contents of the truck and that, therefore, he made a list of the items which he had seen in the truck about two minutes after Thurmond left. The deputy testified that he saw the following items in Thurmond's truck: a blue air compressor with a gas engine and twin tanks, some 2 x 4 studs, some plywood, several pasteboard boxes and an aluminum stepladder. He said that one of the pasteboard boxes was of a kind used to hold spiral nails. The deputy testified further that when he returned to go on duty at 6:00 p.m. on October 4, 1983, he found a report concerning the theft of Mr. Sandlin's property; that as he read the report, he realized that the items which he had seen on defendant Thurmond's truck belonged to Mr. Sandlin; and that, thereupon, he contacted the officer who was investigating the Sandlin theft and informed him about what he had seen during the night.

Agent Preston Purvis, of the Georgia Bureau of Investigation (GBI), who had reached retirement before the trial, testified that he interviewed defendants after they were arrested; that each defendant gave a statement to him; that defendant Thurmond said he and defendant Rautenberg went to Lincoln County on October 3, 1983, to visit Rautenberg's mother, Mrs. Revercomb; that Thurmond said that when he was stopped by "the police" he did not have anything in the back of his truck except "normal junk"; and that Thurmond subsequently said that there was "nothing" in the back of his truck when he was stopped by "the police." With regard to defendant Rautenberg's statement, Agent Purvis testified that that defendant admitted he was the passenger in the truck when it was stopped by "the police"; that Rautenberg also stated that during the visit to his mother's house, he and Thurmond went outside for awhile; that Rautenberg said he went back inside the house but Thurmond stayed outside for a period of time because he was "throwing up"; and that Rautenberg said that when Thurmond came back inside, defendants left Mrs. Revercomb's house. Agent Purvis testified further that he conducted a search of defendant Thurmond's house but that he did not see an air compressor nor an aluminum stepladder during the course of the search.

Defendant Thurmond testified that on the night in question he had an electric air compressor, two stepladders, an extension ladder, acoustical tiles, a cold drink cooler and a drill on the back of his truck. He denied that he entered the construction site and he denied taking the items set forth in the indictment. With regard to the statement he made to Agent Purvis, Thurmond said he never told the agent that there was "nothing" in the back of his truck when it was stopped by the deputy.

Defendant Rautenberg testified that he asked Thurmond to drive

him to his mother's house on October 3, 1983. He stated that he did not enter the construction site and he did not take anything from the construction site. He also stated that defendant Thurmond owned an electric compressor; but he could not say whether or not the compressor was on Thurmond's truck on the night in question. *Held*:

1. In their first enumeration of error, defendants contend the trial court erred in failing to grant their motion for a directed verdict of acquittal. " 'The statutory standard for application by a trial court to decide a motion for a directed verdict of acquittal is "(w)here there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal" . . .' the court may so direct a verdict. *Maddox v. State*, 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984); OCGA § 17-9-1 (a) . . . It is not error to refuse to direct a verdict when, 'viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Wright v. State*, 253 Ga. 1, 3 (1) (316 SE2d 445) (1984); *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590) (1981)." *Thompson v. State*, 175 Ga. App. 645 (334 SE2d 312). See *Humphrey v. State*, 252 Ga. 525, 526 (1) (314 SE2d 436). Viewing the evidence with these principles in mind, we find that the trial court did not err in denying defendant Thurmond's motion for a directed verdict. However the trial court erred in denying defendant Rautenberg's motion for a directed verdict.

(a) With regard to defendant Thurmond, the evidence demonstrates that the stolen goods were found in Thurmond's pick-up truck "recently" following the period of time in which the theft must have occurred; that Thurmond visited Mrs. Louise Revercomb on the night in question; that Mrs. Revercomb lived next door to the construction site from which the goods were stolen; that Thurmond was absent from Mrs. Revercomb's home for a period of time during his visit; and that Thurmond denied that there was anything in his truck when he was confronted by the GBI agent. Viewing this evidence in the light most favorable to the State, we find it sufficient to enable a rational trier of fact to have found the essential elements of theft by taking beyond a reasonable doubt. See *Bankston v. State*, 251 Ga. 730 (309 SE2d 369); *H. R. G. v. State of Ga.*, 170 Ga. App. 776 (1) (318 SE2d 210); *Moore v. State*, 170 Ga. App. 698 (318 SE2d 172). Thurmond's recent possession of the stolen goods, coupled with the other evidence linking him with the theft, negated the propriety of a directed verdict of acquittal. *Moore v. State*, supra. See also *Prickett v. State*, 155 Ga. App. 668 (1) (272 SE2d 534); *Fears v. State*, 169 Ga. App. 172 (1) (312 SE2d 174).

(b) Defendant Rautenberg's case is different. True, Rautenberg visited his mother, Mrs. Revercomb, on the night of October 3, 1983,

and he too was absent from his mother's house for awhile. (Although the evidence demonstrated that Rautenberg was not gone as long as Thurmond.) But there is no other evidence linking Rautenberg with the theft aside from the fact that he was a passenger in Thurmond's truck. In this regard we note that Rautenberg was sleeping when Thurmond's truck was stopped by the deputy and that, more significantly, the stolen goods were in the bed of the truck, not the cab. Thus, unlike Thurmond's case, it cannot be said that Rautenberg was in recent possession of stolen goods. Compare *H. R. G. v. State*, 170 Ga. App. 776, supra, where that defendant's conviction was affirmed where he was a passenger in an automobile and the stolen goods were within reach of his hand, with *Autry v. State*, 150 Ga. App. 584, 586 (2) (258 SE2d 268) in which that defendant's conviction was reversed where contraband was found in the ashtray of an automobile in which he was a passenger. Rautenberg's presence in the truck was not sufficient to show that he was a party to the crime, *Brown v. State*, 250 Ga. 862, 864 (1) (302 SE2d 347), even though the circumstances may have raised suspicions of his guilt. *Parker v. State*, 155 Ga. App. 617, 619 (271 SE2d 871). The trial court erred in declining to grant Rautenberg's motion for a directed verdict of acquittal.

2. In their second enumeration of error, defendants assert the general grounds. In this regard, defendants argue that the identity of the stolen articles was not indisputably established by the evidence. See *Chester v. State*, 144 Ga. App. 717 (242 SE2d 356). We disagree. The property stolen was sufficiently identified by the victim of the crime and the deputy sheriff who discovered it. See generally *Burkett v. State*, 133 Ga. App. 728, 730 (3) (212 SE2d 870).

3. The trial court did not err in permitting the State to cross-examine Mrs. Revercomb concerning the character of defendant Thurmond since the witness testified on direct examination that she did not believe the defendants were dishonest. See *Giles v. State*, 71 Ga. App. 736 (32 SE2d 111); *Hughes v. State*, 141 Ga. App. 506 (233 SE2d 872). The third enumeration of error is without merit.

4. The trial court did not abuse its discretion in denying defendants' request to allow the jury to view the items (then stored in a stationwagon) which they asserted were in the bed of the truck on the night in question. See *Megar v. State*, 144 Ga. App. 564, 565 (4) (241 SE2d 447). The fourth enumeration of error is not meritorious.

5. The trial court properly charged the jury concerning evidence of recent, unexplained possession of stolen goods and the inference which may be drawn from such evidence. See generally *Williams v. State*, 252 Ga. 7, 9 (2) (310 SE2d 528). Defendants' fifth enumeration of error is without merit.

6. Defendants' sixth enumeration of error is equally meritless. The trial court did not err in charging the jury that intent to commit

a theft may be inferred from proven circumstances, acts or conduct. See *Shepherd v. State*, 173 Ga. App. 499, 502 (4) (326 SE2d 596).

7. In view of the trial court's finding that defendants absconded and were fugitives from justice (defendants were found subsequently), we cannot say the trial court abused its discretion in refusing to permit defendants to remain free on bond pending appeal. See *Birge v. State*, 238 Ga. 88 (230 SE2d 895); *McCormick v. State*, 161 Ga. App. 573 (289 SE2d 23). The sixth enumeration of error is without merit.

8. In their final enumeration of error, defendants contend they were denied effective assistance of counsel. In this regard, defendants point out that they were represented by the same attorney; that the trial court did not advise them that joint representation may create a conflict of interest; and that the trial court did not determine whether they agreed to joint representation. See in this connection *Dean v. State*, 247 Ga. 724, 725, fn. 1 (279 SE2d 217); *Shirley v. State*, 166 Ga. App. 456, 457 (2a) (304 SE2d 468). This enumeration of error must fail.

"It is fundamental principle that the Sixth Amendment guarantee of effective assistance of counsel includes the right of an accused to be represented by an attorney free of any conflicts of interest. *Glasser v. United States*, 315 U. S. 60, 70 (62 SC 457, 86 LE 680) (1941). There is a presumptive conflict of interest when one attorney is required to represent multiple defendants over their objection. *Holloway v. Arkansas*, 435 U. S. 475, 488 (98 SC 1173, 55 LE2d 426) (1978). However, if the defendants do not object to the multiple representation by the attorney until after trial, there is no benefit of a presumption and the defendants must show that an actual conflict of interest existed which impaired their attorney's performance on their behalf. *Cuyler v. Sullivan*, 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980)." *Keen v. State*, 164 Ga. App. 81, 82 (296 SE2d 91). In the case sub judice, there was no timely defense objection to the joint representation and no material prejudice has been demonstrated. Defendants have failed to show an "actual conflict of interest" adversely affected their lawyer's performance. "A mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence." *Montgomery v. State*, 156 Ga. App. 448, 454 (1980) (275 SE2d 72). See also *Hudson v. State*, 250 Ga. 479, 480 (299 SE2d 531).

*Judgment affirmed as to defendant Thurmond; reversed as to defendant Rautenberg. Banke, C. J., and Benham, J., concur.*

DECIDED FEBRUARY 24, 1986 —
REHEARING DENIED MARCH 10, 1986.

*James G. Blanchard, Jr.*, for appellants.

170

Dennis C. Sanders, District Attorney, Margaret E. McCann, Assistant District Attorney, for appellee.