## A97A1624. DUNBAR v. THE STATE.
(491 SE2d 166)

ELDRIDGE, Judge.

The appellant, Christopher Dunbar, was convicted by a jury in Butts County Superior Court on November 21, 1996, on each of the four counts of Indictment No. 96-R-147: Count 1, theft by receiving (motor vehicle); Count 2, aggravated assault on a police officer; Count 3, fleeing and attempting to elude a police officer; and Count 4, reckless driving. He appeals his conviction, and we affirm.

The record demonstrates that the verdict arose from the following set of facts: On April 9, 1996, Deputy Mark Whitwell was on traffic enforcement duty in a marked police car on Interstate 75. At about 7:50 p.m., he observed the appellant's car, which was a 1989 Oldsmobile Regency, traveling at an excessive rate of speed, "outdistancing all the other traffic on the road." Although Deputy Whitwell did not actually clock appellant's speed, he estimated appellant was driving at least 25-30 mph above the speed limit. Based on his observations, Deputy Whitwell decided to stop appellant's car to at least give appellant a warning and to tell him to slow down.

Deputy Whitwell pulled appellant's car over, exited his patrol

car, walked up to the driver's window, and asked appellant for his driver's license and proof of insurance, which appellant did not have. Appellant's car engine was still running during the deputy's conversation with the appellant. Deputy Whitwell noticed that the door lock on appellant's car was missing or "punched out" and that there was damage to the steering column. Based on the type of damage to the car, Deputy Whitwell suspected that the car was stolen, and he requested appellant to wait while he went back to his patrol car. Deputy Whitwell went to the rear of appellant's car to recheck the tag number, which he noted was XRF 687. While the deputy was standing behind appellant's car, the car was driven backward towards the deputy; the deputy jumped out of the car's path, and the car drove forward and left. Deputy Whitwell would have been hit by the backward movement of the car if he had not moved out of the way.

Deputy Whitwell pursued appellant two and one-half to three miles on the interstate until appellant exited onto Highway 36. The pursuit continued down Highway 36 into the City of Jackson where appellant's car finally overheated, and Deputy Whitwell was able to apprehend appellant. During Deputy Whitwell's pursuit of appellant, appellant traveled at speeds of up to 110 mph, forced several cars traveling in the opposite direction off the road by driving his car into the opposite lane of traffic, ran through several stop signs, ran through a partial roadblock, struck another vehicle, ran through two other patrol cars, and attempted to sideswipe Deputy Whitwell's patrol car when the deputy pulled up beside him.

Appellant testified at trial and denied that he was traveling at 25-30 mph over the speed limit. Appellant testified that he was traveling at the same speed that other vehicles around him were traveling, which was about 60 mph, and that he was traveling beside a tractor-trailer truck. Appellant testified that he saw the patrol car along the side of the road but kept driving beside the truck for about another mile or mile and a half before the patrol car pulled up behind him and pulled him over.

Appellant further testified that while stopped he had a brief conversation with Deputy Whitwell, during which Deputy Whitwell accused him of driving a stolen car. Appellant denied Deputy Whitwell's statement that the deputy walked to the back of appellant's car, and appellant denied trying to back his car into the deputy. Appellant further testified that Deputy Whitwell was standing next to the driver's door and ordered him to turn off the engine; that when he failed to do so, Deputy Whitwell reached for his gun, and appellant then drove off at a high speed; and that the reason he drove off was that he had a parole violation in Savannah, Georgia, and knew he would be arrested. Appellant admitted that the car he was driving had a broken lock and steering column, that he did not have a key to

the car, and that there was "a little gadget on the steering column that you had to pull to crank the car up," but denied knowing that the car was stolen. Appellant denied driving at speeds over 100 mph, driving into the lane of traffic moving in the opposite direction, running stop signs, and trying to sideswipe the deputy's patrol car during the chase.

At the time of appellant's arrest, he gave a false name of Christopher Dunbar to the arresting officer. Appellant was indicted under the name of Christopher Dunbar, and it was only after indictment that the State became aware that appellant's true name was, in fact, George Gay.

1. Appellant, in his first two enumerations of error, contends that there was insufficient evidence to convict him under Count 1, theft by receiving stolen property. Appellant contends that the State failed to prove the essential element of ownership of the stolen vehicle and failed to identify the car found in appellant's possession as the same car that was alleged in the indictment. Appellant further alleges that the State failed to meet its burden of proof regarding the essential element of knowledge that the vehicle was stolen.

(a) Appellant's argument that there was no evidence to connect the vehicle stolen from Norma Smith and the vehicle being driven by appellant at the time of his arrest or to identify the vehicle found in appellant's possession as being the same vehicle that the State alleged was stolen, i.e., Norma Smith's car, is without merit. Ownership of the stolen vehicle and that the vehicle found in appellant's possession was the same vehicle that was alleged in the indictment was proven by the testimony of the victim, Norma Smith, coupled with the testimony of Deputy Whitwell. See *Rautenberg v. State*, 178 Ga. App. 165, 168 (342 SE2d 355) (1986).

Norma Smith testified that she owned a 1989 Oldsmobile Regency automobile; that such vehicle was stolen while she was eating dinner at the Ramada Inn; that she notified the police immediately; that she had never given the appellant permission to use her car; and that during the month of April she had not given anyone permission to use her car.

Deputy Whitwell testified that he was patrolling Interstate 75 on April 9, 1996; that he stopped appellant for excessive speed; that appellant was driving a 1989 Oldsmobile Regency with a tag number of XRF 687; that he observed damage to the door of the vehicle and the steering column; that while he was waiting on a response on the vehicle identification, appellant fled the scene; that after a high speed chase he finally apprehended appellant; and that he received confirmation that the vehicle had been reported stolen.

" '[W]here there is some evidence descriptive of the stolen property which is substantially conformable to the description alleged in

the indictment, and nowhere contradictory thereof, the identity of the stolen property is a matter addressed peculiarly and solely to the jury, and in such case there is no fatal variance between the allegata and the probata. [Cit.]' [Cits.]" *Burkett v. State*, 133 Ga. App. 728, 731 (212 SE2d 870) (1975). The year, make, model, and tag number of the car driven by the appellant at the time of his arrest were identified by the witnesses at trial and matched the description of the vehicle set out in the indictment as the vehicle stolen from Norma Smith.

(b) Scienter is an essential element of the crime of theft by receiving stolen property. See OCGA § 16-8-7; *Turntime v. State*, 206 Ga. App. 226 (424 SE2d 877) (1992); *Abner v. State*, 196 Ga. App. 752 (397 SE2d 36) (1990). Scienter "may be proved by circumstantial evidence or inferred from circumstances which would excite the suspicions of an ordinarily prudent man. Even though knowledge is denied by the defendant, the jury would be authorized to return a verdict of guilty." (Citations and punctuation omitted.) *Gunn v. State*, 163 Ga. App. 906, 907 (296 SE2d 221) (1982). In the case sub judice, the evidence adduced by the State set forth circumstances that "would excite suspicion in the mind of an ordinary prudent person." *Turntime*, supra at 227. This evidence includes the fact that both the door lock and the steering column were damaged; that appellant did not have a key to the vehicle and had to start the car by "a little gadget on the steering column that you had to pull to crank the car up"; that appellant fled the scene; and that appellant gave a false name when he was arrested. Recent possession of stolen property, in conjunction with other evidence, allows the jury to infer knowledge of the theft of the property. *Pate v. State*, 158 Ga. App. 395 (1) (280 SE2d 414) (1981); *Ridley v. State*, 135 Ga. App. 333, 334 (217 SE2d 459) (1975) (Evans, J., concurring specially); *Higginbotham v. State*, 124 Ga. App. 489 (3) (184 SE2d 231) (1971). Thus, the jury was authorized to infer that appellant had the requisite knowledge that the car was stolen.

The evidence, viewed in a light most favorable to the verdict, was sufficient for a rational trier of fact to have found appellant guilty of the offense of theft by receiving stolen property. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant also contends that evidence of an alleged similar transaction should not have been admitted. We disagree and find that the State carried its burden of showing a sufficient degree of similarity for admission of this particular similar transaction evidence.

Before evidence of an independent offense or act may be admitted into evidence, the State must make three affirmative showings: First, the State must demonstrate that it seeks to introduce such evidence for an appropriate purpose, such as illustrating appellant's

identity, intent, course of conduct and bent of mind; second, the State must show sufficient evidence to establish that the accused committed the independent offense or act; and third, the State must demonstrate a sufficient connection of similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). "Similarity is an important factor in determining the admissibility of the extrinsic crime; however, it is not the only factor, nor is it necessarily the controlling factor. The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar. Depending on the purpose for which the extrinsic evidence is offered, the State may be required to prove a high degree of similarity between the relevant characteristics of the extrinsic crime and the crime charged, or it may have only the burden of showing a logical connection between the crimes which are essentially dissimilar. *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) [(1992)]." *Harris v. State*, 222 Ga. App. 52, 54 (473 SE2d 232) (1996).

The State served a timely notice on appellant of its intent to introduce evidence of alleged similar transactions for the purpose of showing "intent, motive, plan, scheme, bent of mind, and course of conduct." Appellant filed an objection to the similar transaction evidence and motion in limine, and a hearing was held pursuant to Uniform Superior Court Rule 31.3 (B), prior to the evidence being submitted to the jury.

At the hearing, the State stated that it was seeking to introduce into evidence a 1992 conviction of George Gay which occurred in Ware County, Georgia, for the offenses of unlawfully taking a motor vehicle, fleeing and attempting to elude, and giving a false name, to wit, Chris Dunbar, to a law enforcement officer, for the purpose of showing appellant's bent of mind and course of conduct. The trial court ruled in favor of the State, finding that the similar transaction was similar to the crime charged, and allowed such evidence for the purpose of showing appellant's intent, bent of mind, scheme, common design, and identity.

At trial, the State introduced into evidence a certified copy of appellant's conviction for the similar transaction and the testimony of the arresting officer. Police Officer Gary Smith testified that he had arrested appellant in 1992, in Waycross, Georgia; that he had been dispatched to a location regarding a report from an owner that the owner's car was in the process of being stolen; that en route he observed the stolen vehicle pass him, going in the opposite direction; that he activated his overhead lights, and the vehicle accelerated at a high rate of speed; that appellant drove for only two to three blocks before the vehicle turned onto a dead end road; that when the vehicle

reached the end of the road, it wrecked into a five-foot culvert ditch; that a black male jumped out of the vehicle and fled into the woods; that appellant was apprehended in the woods and placed under arrest; that at the time of appellant's arrest, appellant gave officers the false name of Christopher Dunbar and signed his tickets with such name; and that he subsequently found out that appellant's actual name was George Gay.

(a) Appellant argues that because identity was not an issue and he was not charged in the case sub judice with the offense of giving a false name, evidence of a separate prior offense of giving a false name would not be admissible as tending to establish any of the offenses with which appellant was charged in the instant case.

The issue of identity is implicit under the standards set forth by *Williams*, supra. Before the factfinder can consider evidence of similar offenses or transactions for any purpose, it must first be shown that the defendant on trial is the same person to whom the evidence of a similar offense or transaction pertains. The fact that appellant gave the false name of Christopher Dunbar when arrested for the prior offense and the same false name when arrested in the case sub judice is evidence that the defendant on trial is, in fact, the same person to whom the evidence on the similar offense pertains, and also goes to show a pattern of behavior or course of conduct, i.e., the use of a particular false name by the defendant.

(b) Appellant further alleges that the offenses of theft by taking and theft by receiving are two different crimes, with different elements, and are, in fact, mutually exclusive; therefore, proof of a theft by taking cannot be used to establish a theft by receiving. Appellant further alleges that the two offenses are too remote in time and place, the first offense occurring in 1992 and the later in 1996, to show continuous course of conduct, plan or scheme.

In determining the admissibility of similar transaction evidence, the court should focus on the similarities, not the differences, of the two occurrences. *Farley v. State*, 265 Ga. 622 (458 SE2d 643) (1995). Although the crimes here are not identical, there exists a high degree of similarity between the extrinsic crime and the crime charged. Both involve the arrest of appellant while driving a stolen vehicle; appellant fleeing and eluding the police; a police chase which culminated only when appellant was no longer able to drive the vehicle in which he was fleeing; and appellant's use of the same false name upon arrest.

"[M]ere lapse of time between the commission of any prior similar crime and the commission of the offense currently at trial does not render the evidence automatically inadmissible; lapse of time is but one factor to be taken into consideration in determining admissibility. *Oller v. State*, 187 Ga. App. 818, 820 (2) (371 SE2d 455)

[(1988)]." *Harris*, supra at 54. In the case sub judice, the four years between the current offense and the similar offense would not demand that the evidence is inadmissible. See *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985) (lapse of 11 years); *Braddock v. State*, 208 Ga. App. 843 (432 SE2d 264) (1993) (lapse of 15 years); *Cooper v. State*, 173 Ga. App. 254, 255 (325 SE2d 877) (1985) (lapse of 19 years). " '[T]he lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility. [Cit.]" *Braddock*, supra at 844 (2).

3. Appellant further alleges that the jury charge on similar transaction evidence did not properly limit the purpose for which the evidence was to be considered.

Prior to the introduction into evidence of the similar transaction testimony, the trial court instructed the jury regarding their consideration of such evidence. The transcript shows that the court paraphrased the charge on similar transactions from the Suggested Pattern Jury Instructions, and that the court did not specifically limit the use of such evidence, but instead articulated all the various possible uses, i.e., "knowledge, common design, modus operandi, motive, intent, good or bad faith, bent of mind, plans, scheme, course of conduct, and identity or other matters dependent upon a person's state of mind at the time of the offense." Further, the trial court did not limit such instructions to any specific count of the indictment. Appellant alleges both as error. Counsel for appellant did not object to the similar transaction charge when it was initially given.

Appellant made a written request that a charge on similar or connected offenses be given at the close of evidence. Appellant's written request was an exact duplication of the pattern jury charge and did not contain language limiting the use of such evidence to any specific purpose or count of the indictment. During the jury charge given at the conclusion of the trial, the trial court asked the jury to remember what the court had charged earlier on similar offenses and gave no further charge on such matter. At the end of the charge counsel for appellant reserved objections to the trial court's charge.

"We have previously held that when evidence is admitted for one purpose, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, *in the absence of a [proper written] request to so instruct the jury*." (Citations and punctuation omitted; emphasis in original.) *Miller v. State*, 219 Ga. App. 284, 286 (3) (b) (464 SE2d 860) (1995); see *Rice v. State*, 217 Ga. App. 456 (458 SE2d 368) (1995). Since appellant failed to file a written request which properly limited the purpose for which the evidence was to be considered, we find no merit to this argument.

4. In appellant's final enumeration, he alleges that the trial court erred in denying his motion to suppress. Appellant contends

that Deputy Whitwell's testimony that he stopped appellant for a valid purpose was not credible and that his highway stop of appellant was unreasonably pretextual and illegal.

At the motion to suppress hearing, Deputy Whitwell testified that he was on traffic enforcement duty on the evening in question and was stationed in his marked vehicle on the shoulder of Interstate 75 near Exit 67; that there was "quite a bit of traffic at the time"; that he noticed the vehicle which appellant was driving "out-distancing" the surrounding traffic; that based on his experience he estimated the vehicle's speed at 25 to 30 mph faster than the surrounding traffic; and that he pulled out to clock appellant's speed, but appellant had already started to pull across two lanes of traffic into the curb lane, and therefore, he was unable to do so. Even though appellant denied that he was speeding, it is the role of the factfinder, not the appellate courts, to judge the credibility of witnesses, or lack thereof, and to decide whether to accept such testimony or to disregard it entirely; the appellate court must view the evidence in a light most favorable to the jury's verdict. OCGA § 24-9-80; see *Malcolm v. State*, 263 Ga. 369, 370 (434 SE2d 479) (1993); *Ward v. State*, 205 Ga. App. 504, 507 (423 SE2d 288) (1992).

Even though the deputy was unable to clock appellant's speed, probable cause existed to arrest appellant for speeding based on the deputy's testimony regarding his observations and his opinion as to speed. However, pretermitting the existence of probable cause to arrest, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) [(1968),] recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. We have repeatedly held that an authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." (Citations and punctuation omitted.) *Coley v. State*, 177 Ga. App. 669, 670 (341 SE2d 9) (1986); see *McConnell v. State*, 188 Ga. App. 653 (374 SE2d 111) (1988).

Clearly, in the case sub judice, the deputy had reasonable grounds, based upon a founded and reasonably articulable suspicion, to make a *Terry* stop of the appellant's vehicle and probable cause to make an arrest based on the events that occurred later in the Dep-

uty's presence, i.e., appellant's failure to produce his driver's license and insurance card; the vehicle's punched out door lock and broken steering column; and appellant's backing his car toward Deputy Whitwell, fleeing from the area of the stop, driving at speeds up to 110 mph, driving on the wrong side of the road, forcing other cars from the road, driving through several stop signs, running through a roadblock, striking another vehicle, and attempting to sideswipe Deputy Whitwell's patrol car. Thus, appellant's argument is clearly without merit.

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 11, 1997.

*Hemmann & Hemmann, Paul E. Hemmann,* for appellant.
*Tommy K. Floyd, District Attorney, Mark S. Daniel, Assistant District Attorney,* for appellee.