## A98A0724. MILTON v. THE STATE.
### (503 SE2d 566)

RUFFIN, Judge.

A jury found Demar Fitzgerald Milton guilty of trafficking in cocaine, fleeing or attempting to elude a police officer, reckless driving, and speeding. Milton appeals his convictions, and we affirm.

The standard of review for a criminal conviction is whether after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Hopkins v. State*, 222 Ga. App. 157 (473 SE2d 267) (1996).

The evidence, viewed in this light, shows the following. On December 9, 1996, Officer Phillip Neely received information from an unidentified individual who called the narcotics hotline and informed Neely that a well-dressed male who was racially described and driving a Ford car would meet with a "heavy set" male who was racially described with a certain hair style to conduct a large drug deal at the McDonald's restaurant or Amoco station in the vicinity of Glenwood Road and Columbia Drive. In response to this information, the police established surveillance at Glenwood and Columbia Drive. During the surveillance, Neely saw a car and two individuals who matched the informant's descriptions. Neely, who was working as a narcotics undercover agent, testified that he observed a drug transaction between the two subjects and radioed the other surveillance units. However, before the officers could initiate an investigative stop, the subjects left the scene. Police officers followed in pursuit, and Officer Davis, who was in uniform and driving a marked patrol car, pulled in behind Milton's car and turned on his blue lights. According to Neely, Milton "slowed his vehicle to almost stop, [then] he took off." While the officers pursued Milton, he drove in the emergency lane, crossed lanes of traffic, jumped the curb and reached speeds of 100 to 120 mph. Neely and Davis saw Milton throw a burgundy briefcase out of the driver's side window. While other uniform officers pursued Milton, Davis and Neely retrieved the briefcase. Neely secured the briefcase in the trunk of his vehicle and continued the pursuit. Milton eventually abandoned his vehicle and jumped a fence. He was subsequently apprehended by police officers.

When Neely looked in the discarded briefcase, he discovered what appeared to be three individually wrapped kilos of cocaine, which were actually coconut wrapped in clear plastic wrap. Two of the three packages of coconut, however, contained a smaller package of crack cocaine wrapped around the coconut. One such package contained 23.7 grams of crack cocaine, and the other contained 24.6

grams of crack cocaine. The total weight of the crack cocaine was 48.3 grams.

1. Milton contends that there was insufficient evidence to support the verdict because the State failed to prove that he knowingly possessed the cocaine. We disagree. A person commits trafficking when he knowingly delivers or is knowingly in possession of 28 grams or more of cocaine. OCGA § 16-13-31 (a) (1). "[K]nowledge or scienter may be proved, like any other fact, by circumstantial evidence." (Citations and punctuation omitted.) *Langham v. State*, 196 Ga. App. 71, 72 (2) (395 SE2d 345) (1990).

In light of the evidence presented by the State that Milton initially fled from the police by car, was seen throwing the briefcase that contained the cocaine from the car window, abandoned the car, and continued to flee on foot until his apprehension, the jury was authorized to find that he was knowingly in possession of cocaine. Consequently, under the standard of *Jackson v. Virginia*, supra, the evidence adduced at trial was sufficient to authorize the jury's verdict.

2. Milton contends the trial court erred in admitting evidence that he was previously convicted of possession of cocaine on April 3, 1991. More specifically, Milton asserts that the evidence was introduced for an improper purpose, that it was not sufficiently similar to the charged crime, and that it occurred over five years prior to the charged crime.

The evidence regarding his 1991 conviction shows that more than five years before the instant case, Clayton County Police Officer Phillip Bailey stopped Milton for running a red light and detected an odor of alcohol. The officer saw a brown paper bag on the passenger seat and an open can of beer between Milton's legs on the floorboard. A computer check revealed Milton had a suspended license. Milton was arrested for the open container and driving with a suspended license. After obtaining Milton's consent, the officer searched Milton's vehicle, and the officer found crack cocaine in the brown paper bag, along with a quantity of powder cocaine and marijuana. Milton was charged with possession with intent to distribute because the total weight of the cocaine was 14.4 grams. In the instant case, the State tendered evidence of the 1991 conviction to establish "guilty knowledge," identity, modus operandi, and course of conduct.

In general, "evidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue." *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991). However, "[e]vidence of similar crimes is admissible where its

relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, *outweighs* its prejudicial impact." (Emphasis in original.) *Oller v. State*, 187 Ga. App. 818, 819 (2) (371 SE2d 455) (1988). Before independent crime evidence is admitted the State must demonstrate the following: (1) the evidence of the independent crime is relevant for a purpose other than to show a probability that the defendant committed the present charge and not to show criminal character; (2) there is sufficient evidence to prove the independent crime was committed by the accused; and (3) there is a sufficient connection or similarity between the independent offense and the present charge so that proof of the former tends to prove the latter. *Williams*, supra at 642. The number of similarities is not determinative, but rather the evidence is admissible when "the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged. . . ." (Citations and punctuation omitted.) *Barker v. State*, 226 Ga. App. 747, 749 (3) (487 SE2d 494) (1997).

We first note that Milton entered a guilty plea to the independent crime. In addition, the admission of the certified copy of his conviction satisfied the first prong of the *Williams* criteria that Milton committed the independent crime. We now focus on the remaining two requirements.

(a) Milton contends that the independent evidence was not sufficiently similar to the present charge and that the State offered the independent crime evidence for the sole purpose of establishing Milton's bad character. Milton also contends that the two crimes are not sufficiently similar because Milton was charged with trafficking cocaine in the independent crime, but was only indicted for possession of cocaine.

Even though each arrest occurred under different circumstances and resulted in different charges, " '[t]here is no requirement that a previous offense be absolutely identical to the one being prosecuted so as to make it admissible.' [Cit.]" *Gonzalez v. State*, 213 Ga. App. 667, 668 (1) (445 SE2d 769) (1994). In *Gonzalez*, we held that a prior arrest for possession of cocaine was sufficiently similar to a present charge of trafficking in cocaine. Id. The State has met this standard of admissibility. Both crimes were sufficiently similar in that they both occurred within metropolitan Atlanta and involved enough cocaine to support an arrest for possession with intent to distribute. Moreover, Milton was driving a motor vehicle and committed traffic offenses when he was arrested for both crimes. The trial court correctly determined the independent crime was sufficiently similar to the present crime.

In addition, the purpose for the admission of the independent crime evidence must be examined as well. Evidence which is

presented to prove the identity of the perpetrator may require numerous similarities between the crimes to show that the charged crime "bears the defendant's 'criminal signature.'" *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989). However, if identity is not at issue, then admission of such evidence requires a lesser degree of similarity to meet the standard for admissibility. *Harris v. State*, 222 Ga. App. 52, 54 (2) (a) (473 SE2d 232) (1996).

As we have discussed above, the State met the *Harris* standard for admissibility. Consequently, the trial court did not err in admitting the similar transaction evidence to prove guilty knowledge, intent, bent of mind, and modus operandi.

(b) Milton also contends that the independent crime, having occurred five years earlier, was too remote in time to be admissible. We disagree.

" 'Mere lapse of time between the commission of any prior similar crime and the commission of the offense currently at trial does not render the evidence automatically inadmissible; lapse of time is but one factor to be taken into consideration in determining admissibility. [Cit.]' [Cit.]" *Dunbar v. State*, 228 Ga. App. 104, 109-110 (2) (b) (491 SE2d 166) (1997). "The lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility." (Citations and punctuation omitted.) Id. at 110.

In this case, the mere passage of five years between the independent crime and the present case did not render the evidence inadmissible. Accordingly, notwithstanding the lapse of time, we find no error in admitting the similar transaction. *Williams*, supra.

3. Milton contends that the trial court erred in denying his motion for mistrial because the prosecutor made improper closing remarks regarding the prior conviction. On appeal Milton argues that the prosecutor improperly argued "unauthorized and illegal inferences pertaining to [Milton's] character, requesting a conviction on the [instant case] merely by suggesting conformity with a prior criminal behavior."

First, in this instance, Milton contends that the prosecutor stated in his closing argument that Milton was not a completely innocent person because he was a convicted felon. Milton argues that the prosecutor effectively argued the similar transaction evidence as character evidence. Milton also challenged this comment as burden shifting. Second, Milton asserts that the prosecutor stated that "[Milton] . . . got arrested in Clayton County for possession with intent to distribute back in 1991, and he was lucky enough to go to the courthouse and plead to possession of cocaine, he was a convicted felon, goes out there and meets Mr. Watson. And what do they do? There is this exchange, a transaction." Milton argues that by empha-

sizing Milton's prior conviction to the jury, the prosecutor again argued the similar transaction evidence as character evidence instead of using it for the purpose that it was admitted.

Although Milton did not object to the prosecutor's closing argument until both arguments were concluded, the trial court accepted the objection as timely. At trial, Milton never specifically stated his objection but merely alluded to a repeated theme in the prosecutor's closing argument that the defense "had not proved what [they] said [they] were going to prove." In addition, Milton moved for a mistrial but did not request that curative instructions be given to the jury after the alleged improper argument. The trial court did not give a jury instruction sua sponte.

First, we note that "the trial court has the right and duty to govern the scope of argument by counsel both prior to and after the presentation of evidence. The proper range of comment by counsel is a matter within the discretion of the trial court. This court will not disturb a court's ruling on a motion for a mistrial in the absence of a manifest abuse of discretion, and a mistrial is essential to preserve a defendant's right to a fair trial." (Citations and punctuation omitted.) *Bowen v. State*, 203 Ga. App. 371, 374 (5) (417 SE2d 18) (1992).

We have reviewed the context of the motion for mistrial with regard to the objectionable statements made by the prosecutor. As to the prosecutor's comment that Milton was not a completely innocent person, we conclude that this remark was made to refute Milton's defense that he was framed, that he had no knowledge of the cocaine, and consequently had no intent to possess the cocaine. Contrary to Milton's assertion, we conclude that the prosecutor's argument was not a comment on Milton's presumption of innocence.

Moreover, "[Milton's] failure to request a curative instruction constitutes a waiver of any appellate issues regarding the giving of such an instruction to the jury. [Cit.] Reversible error would not flow from the failure to give an unrequested curative instruction, as in no case will a trial judge's ruling or election be reversed for not going further than requested. [Cit.]" *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995). Pretermitting whether an abuse of discretion occurred in the denial of the motion for mistrial, we conclude that such error, if any, is harmless. Id. Consequently, the trial court did not err in its denial of Milton's motion for mistrial based upon this objection to the prosecutor's comments.

However, the prosecutor's second comment concerning Milton's prior conviction was improper. But under the circumstances of this case, no reversal is required. The trial court fully and correctly instructed the jury on the presumption of innocence, the State's duty of proving guilt beyond a reasonable doubt, and the purpose of similar transaction evidence. Considering the subsequent jury instruc-

tions and the overwhelming evidence against Milton, we find the error harmless beyond a reasonable doubt. *Oller*, supra at 823.

4. Milton contends that the trial court erred in denying his motion to suppress the fruits of the purportedly illegal traffic stop. We disagree.

In this instance, the officers conducted surveillance after receiving an anonymous tip that a drug transaction would occur between two particular individuals. The officers observed two persons, who matched the descriptions given by the tipster, conduct a drug transaction. Before the police could make a traffic stop both individuals fled in separate vehicles. During the pursuit of Milton, the officers observed him discard the cocaine. The officers recovered it and subsequently arrested Milton.

The facts in the instant case are similar to the facts in *Hunt v. State*, 205 Ga. App. 490 (422 SE2d 24) (1992). In *Hunt*, police officers received an anonymous tip that the defendants would return to their residence in a white Chevrolet Spectrum with a large quantity of cocaine. The officers conducted surveillance of the location and observed the described vehicle pull in front of the residence. The officers attempted to initiate a traffic stop by activating the blue lights, but the vehicle fled. While in pursuit, the defendant threw a small object out of the vehicle's window. The officers stopped the vehicle and retrieved the object, which was determined to be cocaine. Relying on the U. S. Supreme Court's decision in *California v. Hodari D.*, 499 U. S. 621 (111 SC 1547, 113 LE2d 690) (1991), we held that the "defendant was not 'seized' when the cocaine was abandoned. He had not been touched by the officers; he did not submit to the officers' 'show of authority' — the flashing blue lights. Simply put, the defendant was in a state of flight when the cocaine was discarded and it cannot be said that it was the fruit of an illegal arrest." *Hunt*, supra at 491. See also *Smith v. State*, 217 Ga. App. 680 (2) (458 SE2d 704) (1995).

Accordingly, Milton was not "seized." Milton's failure to submit to the authority of the police officers is evident by the fact that he was "in a state of flight when the cocaine was discarded." *Hunt*, supra at 491. We thus conclude that the cocaine was not the fruit of an illegal arrest. Accordingly, the trial court did not err in denying Milton's motion to suppress.

5. Milton contends that the trial court erred in denying his motion for mistrial on the grounds that he was seen by a juror outside the courthouse handcuffed to another criminal defendant. We disagree.

" 'Absent justifying circumstances, the defendant normally should not be seen by the jury handcuffed in the courtroom or courthouse. However, where one or more jurors by chance see the defend-

ant in handcuffs outside the courtroom, it is not error to deny a motion for mistrial.' [Cit.]" *Allen v. State*, 210 Ga. App. 447, 448 (2) (436 SE2d 559) (1993).

Here, a juror exited the restroom across the hall from the elevator while Milton, handcuffed to another criminal defendant, waited for the elevator. In examining the juror outside the presence of the other jurors, the trial court determined that the juror saw some prisoners, but she tried not to look at them. The juror stated that she saw "a person in front of [the prisoners] in a suit. I couldn't really identify if it was [Milton] or not." The trial court noted outside the presence of the jury that "it would be nice if we had a judicial center . . . where the prisoners have separate elevators and facilities from the jurors. [But] we do the best we can here with everybody crowding onto the same elevators."

Clearly, the evidence shows that the juror merely saw an unidentified individual and this observation was completely inadvertent. Under the facts and circumstances of this case, we find "justifying circumstances" for the juror's observation of Milton in handcuffs, assuming such observation was in fact made. Accordingly, the trial court did not err in denying Milton's motion for mistrial. *Allen*, supra.

6. Milton contends that the trial court erred in denying his motion to dismiss the indictment and asserts that the State destroyed exculpatory evidence by destroying the packaged coconut which was in the discarded briefcase that contained the cocaine.

Milton also contends that the coconut packages were exculpatory because they demonstrate the intent on the part of the package maker to frame him and correspondingly showed the lack of his intent to possess the drugs within the package.

At the motion hearing, Neely testified that the police recovered three "kilos" of suspected cocaine, wrapped in Saran Wrap. These "kilos" consisted of three to four packages of coconut. Two of the "kilos" contained another bag which was taped on top of the coconut packages, and these other bags were found to contain cocaine. With regard to the packages of coconut, the officer was told that perishable items would not be accepted into the property room. Accordingly, the officer photographed the coconut packages, and subsequently they were destroyed. The cocaine was submitted to the crime lab. After the hearing, the trial court did not find that the officers exhibited bad faith because the narcotics department had a policy not to preserve perishable items such as food and the officers took photographs of the evidence and made them available to the defense. Consequently, the trial court ruled that the destruction of the coconut did not deny Milton due process of law.

" 'In dealing with the failure of the state to preserve evidence

which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).' [Cit.]" *Pickens v. State*, 225 Ga. App. 792, 799 (5) (484 SE2d 731) (1997). See also *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994). " 'Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' *Arizona v. Youngblood*, [supra at] 58; [cit.]." *Brantley v. State*, 199 Ga. App. 623, 624 (1) (405 SE2d 533) (1991).

We first address the issue of the officer's purported bad faith. We find no error in the trial court's ruling. "Whether bad faith had been demonstrated was a question of fact. The trial judge was the trier of facts in this matter, and resolved all issues of truthfulness placed before [her]; we do not disturb [her] finding if there is any evidence for it." (Citations and punctuation omitted.) *Lynott v. State*, 198 Ga. App. 688, 690 (4) (402 SE2d 747) (1991). Based on the foregoing evidence, the trial court did not err in finding a lack of bad faith.

We next review the materiality of the coconut packages. As the trial court noted, Milton was not prevented from reconstructing the evidence. The trial court reasoned that Milton could have obtained similar packages of coconut and demonstrated the manner in which the coconut packages were combined with the cocaine. Consequently, Milton has failed to satisfy the standard of constitutional materiality because "comparable evidence" was reasonably available. *Pickens*, supra. Milton further maintains that duplication of the evidence would not further his defense because the destruction of the coconut packages precluded him from examining the plastic bags that contained the coconut and from tracing the packages from the original distributor to the purchaser. However, Milton failed to establish that any package of coconut could be traced to the original purchaser or that any fingerprints could have been lifted from any plastic bag. Even if Milton could have presented evidence which identified the original purchaser or evidence which identified who handled the coconut packages, this evidence would not negate the uncontroverted evidence that Milton discarded the coconut packages that contained more than 28 grams of cocaine.

Accordingly, in the absence of evidence that the officers acted in bad faith by failing to preserve the coconut packages and that the

coconut packages were material and exculpated Milton, we find that Milton was not denied due process of law. *Walker*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED MAY 27, 1998.

*L. Burton Finlayson*, for appellant.

*J. Tom Morgan, District Attorney, Gregory J. Lohmeier, Maria Murcier-Ashley, Assistant District Attorneys*, for appellee.