A01A0013. PENNY v. THE STATE.
(547 SE2d 367)

SMITH, Presiding Judge.

Kenneth Penny was found guilty by a jury of robbery by force. His motion for new trial was denied, and he appeals. He contends that his conviction must be reversed because the State failed to provide him with exculpatory evidence in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), and that the trial court erred in denying his motion for a new trial on the ground of ineffective assistance of counsel. We find no merit in these contentions, and we affirm Penny's conviction.

Construed to support the jury's verdict, the evidence presented at trial showed that an elderly woman's purse was snatched on a

---

street corner in Augusta. An eyewitness, who was approaching the intersection in his vehicle, slowed for a red light. He saw a man running around the corner "pretty fast." The witness testified that he saw the man clutching a small black purse with long handles, "like he was clutching a football," and the handles were flapping as the man ran. The witness then noticed the victim on the ground. When he pulled over and assisted her, she informed him that her purse had been snatched and asked him to call the police. The witness observed several officers down the street, and he alerted them to the incident. The witness described the man he had seen running as a tall, bald, black man with a light complexion and a mustache, wearing a red and blue plaid shirt.

While he was talking to the officers, he noticed the man he had just described walking back up the street. He was "definitely sure" it was the same man. The officers detained the man, later identified as Penny. When a sheriff's department investigator arrived, Penny was turned over to the investigator and transported to the county jail. When Penny was driven away, the witness could see directly into the squad car. He identified Penny at trial as the man he saw that night. The victim testified she could not identify the purse snatcher.

A Richmond County sheriff's deputy testified that he was doing paperwork when the witness summoned him to the scene. He called for an investigator, and while he and the witness and victim were talking, the witness pointed out Penny, who had returned to the scene. The deputy turned around and observed a bald black male, about six feet tall, wearing blue jeans and a plaid shirt. He approached Penny, placed him against a wall, and patted him down for weapons. Before the officer said anything about the purse snatching, Penny blurted out: "I haven't done anything to that lady." According to the officers, Penny was not under arrest at the time.

Two other officers testified to voluntary statements made by Penny. The officers were assigned to watch Penny before he was arrested, and they testified that although they had not asked Penny any questions, Penny kept telling them he had done nothing and asking why he was being held. Penny voluntarily told them, "I haven't taken nothing from that lady." The purse was found several blocks down the street.

When Penny was taken into custody at the scene, he was wearing a red, blue, and white plaid shirt with a white t-shirt underneath. When he was processed into the jail, however, documents show that he was wearing only a white t-shirt, blue jeans, and gray shoes. In his book-in picture he was wearing a white t-shirt. Penny testified at the hearing on his motion for new trial that when he was detained on the street, an officer asked for his shirt, and he gave it to the officer. The investigator testified that when he later attempted to retrieve Penny's clothing from the jail, he was able to obtain other clothing,

but he was not able to get the plaid shirt Penny was wearing that night.

Penny testified at trial and denied robbing the victim. His defense was mistaken identity, and he pointed out the discrepancy in the descriptions of the shirt he was wearing. He maintained that his statements to the officers that he had not done anything to the victim had been made after the officers questioned him about the purse snatching. He also insisted that the night of the incident he was wearing a red and white striped shirt. He testified that his clothing was taken at the jail, where he was issued jail attire before his photograph was taken.

1. Penny contends that his shirt must have been confiscated or destroyed by a member of the investigating team and that because the shirt was exculpatory evidence, the State's failure to turn over the shirt violated its duty under *Brady*. He argues that had this shirt been entered into evidence, a reasonable probability exists that it would have bolstered his credibility and supported his defense that the eyewitness misidentified him. But here, no evidence exists that the State was in possession of the shirt, and the State had no obligation under *Brady* to turn over evidence it did not have. A different standard from that discussed in *Brady* applies. This standard is derived from *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988) and *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).

Under this standard, the prosecution may be penalized when it loses or destroys evidence that could potentially have been helpful to the defense only if the defense shows that the evidence was material and the State acted in bad faith in failing to preserve it. *Milton v. State*, 232 Ga. App. 672, 679 (503 SE2d 566) (1998).

Here, neither the materiality of the shirt nor the bad faith of the State was shown. Under *Trombetta*, supra, evidence is constitutionally material if it has "an exculpatory value that was apparent before the evidence was destroyed" and it is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. The exculpatory value of the shirt in this case was not apparent either before or after it was lost or destroyed. Penny described his shirt at trial by saying, "[t]he dominant color of the shirt is red and it has white lines going down this way about that wide, and it has lines coming across that was a little bit smaller." Although he denied his shirt was plaid, from Penny's description it could easily have been described by others as plaid. It is not clear, therefore, that the shirt would have shown that Penny was misidentified. Through direct and cross-examination, the jury was also apprised of Penny's argument that the State, through either the jail personnel or the officers, had bungled the handling of evidence, which impacted the credibility of the State's witnesses. This

was reinforced by Penny's trial attorney during his closing argument.

Moreover, "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (Citations and punctuation omitted.) *Milton*, supra. And Penny has shown no such bad faith. No officer was shown to have destroyed the shirt, no officer testified that he had lost or destroyed the shirt, and the fate of the shirt was never established. We find no error here.

2. Penny moved for a new trial on the ground of ineffective assistance of trial counsel, contending that counsel was ineffective in failing to subpoena sheriff's department records showing Penny's clothing when he was arrested and in failing to file a motion to suppress statements obtained after an illegal arrest. To prevail on a claim of ineffective assistance of counsel, Penny must prove both prongs of the test in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). He must show both that counsel was deficient and that a reasonable probability exists that but for that deficiency the result of the trial would have been different. *Martinez v. State*, 241 Ga. App. 863, 864 (2) (528 SE2d 294) (2000). We need not address the second prong of the test, because Penny has failed to satisfy the first.

(a) We have determined that the State did not violate Penny's rights in failing to disclose that the shirt he was wearing on the night he was arrested had been lost. It follows that the trial court did not err in denying Penny's motion for new trial on the ground that his trial counsel was ineffective because he did not subpoena sheriff's department records regarding Penny's clothing when he was arrested.

(b) As best we can understand Penny's contention, he maintains he was unlawfully seized at the scene because no probable cause existed to arrest him; therefore, the statements he made to the officers should have been suppressed. He claims his trial counsel was ineffective because he failed to file a motion to suppress these statements.

But the arresting officer testified that a witness positively identified Penny as the person who had assaulted and robbed the victim. This constituted more than enough probable cause for arresting Penny:

> [when] information is supplied by an identified interested citizen, the citizen's credibility is not as suspect and the analysis is not as stringent as when information is given by an anonymous tipster; a law-abiding concerned citizen has a built-in credibility and is deemed to be reliable.

(Citation omitted.) *Yearwood v. State*, 239 Ga. App. 682, 683 (521 SE2d 689) (1999).

Since a motion to suppress based on this ground would not have been granted, it follows that trial counsel was not ineffective in failing to file such a motion. See *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999).

(c) Penny also asserts that his trial counsel should have requested a *Jackson-Denno* hearing because his statements were made while he was in custody and he had received no *Miranda* warnings. It is clear, however, that although a dispute may exist as to whether the statements were made before or after the officers mentioned details of the crime, they were not the result of a custodial interrogation. Rather, they were made voluntarily and spontaneously while the officers were waiting for an investigator. *Miranda* warnings were therefore not required. See *Jack v. State*, 245 Ga. App. 216, 219 (5) (536 SE2d 235) (2000). Penny's trial counsel cannot have been ineffective for failing to challenge the admission of these statements.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 26, 2001.

*Mario A. Pacella*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.