## A10A1674. THE STATE v. MCNEIL.
### (708 SE2d 590)

DILLARD, Judge.

Lyna Nicole McNeil was indicted on one count each of possessing cocaine, possessing less than an ounce of marijuana, and possessing an open container of alcoholic beverage in a motor vehicle. McNeil moved to dismiss these charges following the destruction of the master recording of the traffic stop that led to her arrest. The trial court granted this motion, and the State appeals the dismissal of the charges, contending that the trial court misapplied this Court's decision in *State v. Miller*,[1] which interpreted the Supreme Court of the United States's holdings in *California v. Trombetta*[2] and *Arizona v. Youngblood*.[3] We reverse the trial court for the reasons noted infra.

The record shows that McNeil was the passenger in a vehicle driven by Corey McCoy, which Cobb County Sheriff's officers observed traveling southbound on South Cobb Drive while patrolling that area. The officers noticed that McCoy's vehicle did not have a tag, and a traffic stop was initiated and ultimately made just over the county line in Fulton County.

Once the vehicle stopped, McCoy was investigated by the officers for driving under the influence, but he was ultimately arrested for driving with a suspended license. During the investigation of McCoy, the officers noticed an open beer can between McNeil's seat and the passenger-side door. At this point, however, McNeil was not arrested with McCoy. Instead, McNeil was told by the officers that she was free to leave. Nevertheless, because the officers believed McNeil was intoxicated, she was told to call a friend or family member to pick her up. Unfortunately for McNeil, the hour was late (approaching 2:30 a.m.), and those she contacted for a ride home were either unable or unwilling to comply with her request. McNeil's fate seemed to take a turn for the better, however, when one of the responding officers—who arrived *after* McCoy's arrest—kindly offered to drive her home; and McNeil accepted this gracious offer.[4] Before departing, however, the officer first asked to check McNeil's purse for weapons

---

[1] 298 Ga. App. 584 (680 SE2d 627) (2009), *reversed by State v. Miller*, 287 Ga. 748 (699 SE2d 316) (2010).

[2] 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).

[3] 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988).

[4] The officers testified that they were not going to allow McNeil to walk or drive home for

as a safety precaution. McNeil consented to this search, and there, in plain view, the officer saw two small bags containing cocaine and marijuana on top of the purse's other contents. McNeil was then arrested and ultimately indicted on one count each of possessing cocaine, possessing less than an ounce of marijuana, and possessing the open container of alcoholic beverage that was in the vehicle.

Thereafter, at a motion to suppress hearing, McNeil questioned why a copied DVD of the traffic stop provided by the State did not contain the officers' pursuit of McCoy's vehicle or her eventual search and arrest. This mattered to McNeil because she claimed that, upon her arrest, McCoy chivalrously yelled from the patrol car that the drugs in her purse actually belonged to him. The copied DVD of the traffic stop, however, began at the Fulton County gas station where McCoy and McNeil were stopped and arrested, and it did not contain any of the officers' interactions with McNeil. According to the officers, this was because the recording was manually stopped when they believed their investigation had concluded—i.e., when McCoy was arrested and placed in the back of the patrol car. Thus, the search of McNeil's purse was not recorded.

Additionally, because the recording of the stop began *after* the officers activated their emergency equipment, the copied DVD also did not show any of the actual pursuit of McCoy's vehicle as it crossed over from Cobb County into Fulton County.[5] In general, initiating the patrol car's emergency equipment will result in a "pre-record," in which the recorder jumps back to tape what occurred in approximately the half-minute *before* the equipment was initiated, thereby capturing the driving infractions. And here, the officers originally believed that the patrol car's recording system had malfunctioned because the copied DVD did not contain this "pre-record" of the stop of McCoy's vehicle.

McNeil eventually subpoenaed the master DVD to compare it to the copied DVD presented by the State at the motion-to-suppress hearing. This subpoena, however, was not delivered until the Friday before McNeil's Tuesday trial date. And because it would have taken

---

her own safety due to her intoxicated state; and while McNeil testified that she felt that she could not leave the scene, she was not handcuffed, she was never told she could not leave, she never attempted to leave, and she was allowed to continue using her cell phone. McNeil also admitted to drinking, and she accepted the offer of a ride because she did not want to walk home in four-inch heels.

[5] As to why the officers pursued McCoy and McNeil from Cobb County into Fulton County, there was testimony that the vehicle was traveling at approximately 45-50 miles per hour about one-half to one-quarter mile inside Cobb. The officers, however, were at a complete stop when they noticed that McCoy's vehicle did not have a tag, placing the officers a few hundred yards behind McCoy's vehicle before finally catching up with it. The officers testified that they were less than a mile inside Fulton County at the point of the traffic stop and that they activated their vehicle's emergency equipment a few hundred feet over the county line.

an officer hours to manually copy the master DVD (and he was already scheduled to work multiple shifts that weekend), the State simply agreed to meet with McNeil's counsel to view the master DVD at the Cobb County District Attorney's Office the evening before trial.

A few hours before the scheduled viewing of the master DVD, an officer previewed the DVD and advised the District Attorney's Office that a "pre-record" *did* in fact exist but had not been included in the copied DVD provided to McNeil.[6] According to the officer, the "pre-record" showed the patrol car pulling out onto South Cobb Drive, the initiation of the stop, and the actual stopping of McCoy's vehicle at the Fulton County gas station. The officer also viewed the traffic stops recorded both before and after stopping McCoy's vehicle, and he testified that these buffering incidents had absolutely nothing to do with McNeil's case, thus showing that the officers never reinitiated the recording device after McCoy's arrest and that there was no recording of McCoy's alleged statements that the drugs in McNeil's purse belonged to him. The assistant district attorney, however, never viewed the master DVD, and prior to speaking with the officer before the meeting, he was not familiar with its contents.

When McNeil's counsel arrived at the Cobb County District Attorney's Office, there were immediate issues with viewing the master DVD. Despite the assistant district attorney's best efforts and attempts at using his computer and a DVD player, the master DVD would not play. Eventually, a tech-savvy investigator was summoned to see if he could get the master DVD to play. Upon arriving, the investigator ejected the DVD,[7] examined it, and placed it back inside the player. He then attempted to eject the master DVD again, but instead of ejecting, the player reformatted the DVD sua sponte, erasing its content. Attempts to thereafter play the master DVD were to no avail, and the State could not explain how or why the machine reformatted the DVD. McNeil's counsel was present during the entire incident and filed an amended motion to dismiss the following day.[8]

After hearing the evidence on McNeil's motion to dismiss, the trial court *explicitly stated* that it did not believe the State had

---

[6] Apparently the equipment used in Cobb County patrol cars records the "pre-record" and the actual stop on two different titles, and only the second title (*i.e.*, the actual traffic stop) had been copied from the master DVD. The officer who requested the initial copy of the master DVD was in training during the relevant time period, and he later admitted that it was his error to not also request a copy of the "pre-record."

[7] The master DVD was already in a DVD player when he arrived, having been placed there by an earlier investigator, but neither investigator knew anything about what the DVD contained or that it was original evidence.

[8] McNeil had previously moved to dismiss the charges against her on venue grounds.

intentionally destroyed the master DVD in bad faith. The court, nevertheless, concluded that the master DVD could have contained material exculpatory evidence and that McNeil could not obtain comparable evidence through other reasonable means. Specifically, the trial court was concerned that it could not determine what was on the master DVD and that, if what McNeil claimed was true (i.e., that the master DVD might have shown McCoy claiming the drugs as his own and that venue was improper), this evidence would have been materially exculpatory, at least in part. For this reason, the trial court granted McNeil's motion to dismiss the State's charges against her. This appeal by the State follows.

On appeal, the State contends that the trial court misapplied this Court's holding in *State v. Miller*.[9] At the outset, however, we note that our decision in *Miller*—which is relied upon by both parties and was relied upon by the trial court—has since been overruled by the Supreme Court of Georgia,[10] and it is this decision that controls our decision in the case sub judice.

In *Miller*, we addressed a trial court's dismissal of charges following the State's destruction of a cell phone that a criminal defendant claimed contained contact information for potential alibi witnesses.[11] We affirmed the dismissal, agreeing with the trial court that the evidence was potentially exculpatory and that the State "had engaged in conscious wrongdoing and thus acted in bad faith."[12] Our Supreme Court disagreed with the standard we set forth in *Miller*,[13] holding that the cell phone in that case did not rise to the level of constitutional materiality, which is the "threshold

---

[9] 298 Ga. App. 584 (680 SE2d 627) (2009).

[10] *See Miller*, 287 Ga. at 748.

[11] 298 Ga. App. at 584-86.

[12] *Id.* at 591-92. The dissent maintained that the evidence was insufficient to prove bad faith and that it instead merely demonstrated negligence and/or carelessness on the part of the State. *Id.* at 592 (Bernes, J., dissenting).

[13] We interpreted the Supreme Court of the United States's holdings in *Youngblood* and *Trombetta* and announced the following standard:

> *Youngblood* describes three types of evidence: (1) that which the police knew "would have exculpated" the defendant, (2) that which the police knew "could have exculpated" the defendant, and (3) that of which nothing more can be said other than it is potentially useful evidence. *Youngblood* seems to treat the first type of evidence as "material exculpatory evidence" and to make good or bad faith irrelevant when the police destroy or fail to preserve such evidence. As to the second and third types of evidence, *Youngblood* seems to require a showing of bad faith such as the type outlined in *Trombetta*, i.e., official animus toward the defendant or a conscious effort to suppress exculpatory evidence, before the [S]tate's destruction or failure to preserve such evidence rises to the level of a due process violation. And before dismissal of criminal charges is warranted for destruction or failure to preserve any of the three types of evidence, it would seem that the *Trombetta* requirement, concerning the inability of the defendant to obtain comparable evidence by other reasonably available means, continues in effect.

inquiry" in such matters.[14] In order to rise to that level, the exculpatory value of the evidence must be apparent *before* its loss or destruction, and the evidence must be "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[15] Finally, our Supreme Court concluded that the cell phone's destruction in *Miller* was "accurately characterized as an unfortunate series of mishandlings, mistakes, and negligence by police," such that there was no showing of bad faith by the State.[16]

Applying the foregoing standard in the case sub judice, we disagree with the trial court that the master DVD rose to the level of constitutional materiality; rather, the lost evidence in McNeil's case was at best *potentially* exculpatory.[17] And while we understand the trial court's trepidation over its inability to review the master DVD,[18] the record before us does not support a finding that the loss of the master DVD's contents required dismissal of McNeil's charges. First, there was testimony at the motion hearing that the master DVD's "pre-record" showed the officers' pursuit from Cobb County into Fulton County and that the master DVD did not contain anything else relevant to McNeil's arrest; thus, nothing suggests that this evidence had apparent exculpatory value.[19] Second, we do not believe

---

*Miller*, 298 Ga. App. at 589-90 (footnotes omitted). In reversing this Court's decision in *Miller*, our Supreme Court noted that the appropriate standard for analyzing whether the destruction of potentially exculpatory evidence rises to a violation of due process had already been established in prior decisions, that we erred in failing to apply this standard, and that this standard "was not met in Miller's case." *Miller*, 287 Ga. at 748.

[14] *Miller*, 287 Ga. at 748, 754-55.

[15] *Trombetta*, 467 U. S. at 489 (II); *see also Miller*, 287 Ga. at 754.

[16] *Miller*, 287 Ga. at 755.

[17] *See Ballard v. State*, 285 Ga. 15, 15-16 (2) (673 SE2d 213) (2009) (holding that dismissal was not required when the State destroyed tape-recorded conversation that was not apparently exculpatory and the content of which was addressed in thorough cross-examination). *Compare State v. Blackwell*, 245 Ga. App. 135, 135 (537 SE2d 457) (2000) (dismissal proper when State intentionally destroyed urine sample, which initially tested negative for drugs, later tested positive, and which defendant sought to independently test).

[18] The Supreme Court of the United States has likewise recognized the difficulty of this task, noting that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Trombetta*, 467 U. S. at 486 (II) (citation omitted).

[19] *See State v. Brawner*, 297 Ga. App. 817, 818-19 (678 SE2d 503) (2009) (reversing trial court's dismissal of indictment when, based on officer testimony regarding what appeared on destroyed surveillance tape, there was no evidence that anything "was readily seen, understood, evident, or obvious or that it had any exculpatory value"); *see also Lynott v. State*, 198 Ga. App. 688, 690 (4) (402 SE2d 747) (1991) (no dismissal required when officers destroyed audio recording of drug buy and testified that tape was unintelligible, but defendant claimed the recording could have contained exculpatory evidence). *Accord Bennett v. State*, 23 So3d 782, 787 (II), 794 (VI) (Fla. Dist. Ct. App. 2009) (holding that destroyed video of a field sobriety test "seems more likely to be a loss of 'possibly useful' evidence under the analysis in *Youngblood*," and suggesting that such a video is not "material exculpatory evidence unless the police admit

McNeil is unable to obtain comparable evidence. To the contrary, she may cross-examine the officers regarding the venue issue and McCoy's alleged statements regarding ownership of the drugs in question, and she may also call McCoy as a witness at trial.[20] Accordingly, the master DVD simply does not rise to the level of constitutional materiality. As our Supreme Court explained in *Miller*, "the fact that evidence may be *potentially* useful in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence."[21]

Finally, because we hold that McNeil's evidence was only potentially useful, the destruction of the master DVD does not—in the absence of a showing of bad faith on the part of the State—amount to a due-process violation.[22] And here, while the destruction of the master DVD was certainly regrettable, it was not obviously intentional,[23] as the trial court itself noted in its ruling.[24] The officers involved in the traffic stop and the members of the district attorney's office might well have been negligent or perhaps carelessly unfamiliar with the workings of their own technology, as was acknowledged by the trial court, but "there is no evidence that the [master DVD] was destroyed out of an interested or sinister motive[ ] or through a

---

that it contained evidence that supported the defendant's theory that he was sober").

[20] *Cf. Trombetta*, 467 U. S. at 490 (III) ("[T]he defendant retains the right to cross-examine the law enforcement officer who administered the [destroyed] test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered."). Additionally, we note that the master DVD's "pre-record" would have presented cumulative evidence on the issue of venue because officers admitted that they initiated the emergency equipment in Fulton County, not Cobb County. *See* note 5 *supra*.

[21] *Miller*, 287 Ga. at 754 (emphasis supplied) (punctuation omitted) (quoting *Krause v. State*, 286 Ga. 745, 752 (8) (691 SE2d 211) (2010)). *Cf. United States v. Agurs*, 427 U. S. 97, 109-10 (III) (96 SC 2392, 49 LE2d 342) (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

[22] *Youngblood*, 488 U. S. at 58 ("'[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially* useful evidence does not constitute a denial of due process of law.'" (emphasis supplied)); *see Krause*, 286 Ga. at 752-53 (8) (no due-process violation when evidence was only potentially useful and no showing of bad-faith destruction); *Davis v. State*, 285 Ga. 343, 348-49 (9) (676 SE2d 215) (2009) (same); *Brannan v. State*, 275 Ga. 70, 74 (2) (c) (561 SE2d 414) (2002) (same); *see also Milton v. State*, 232 Ga. App. 672, 679 (6) (503 SE2d 566) (1998) (no due-process violation when defendant could use comparable evidence and no showing of bad-faith destruction); *Brantley v. State*, 199 Ga. App. 623, 623-24 (1) (405 SE2d 533) (1991) (same).

[23] *See Brawner*, 297 Ga. App. at 820 ("[T]here is no evidence that the police had knowledge that the videotape had exculpatory value when it was lost. . . . Georgia courts have required more than negligent or careless conduct to support a finding of bad faith.").

[24] Whether the State acted in bad faith is a question of fact for the trial judge, who resolves issues of truthfulness. *See, e.g.*, *Swanson v. State*, 248 Ga. App. 551, 551 (1) (a) (545 SE2d 713) (2001); *Milton*, 232 Ga. App. at 679 (6). And we will not disturb the trial court's finding in this respect, so long as there is any evidence to support it. *Swanson*, 248 Ga. App. at 551 (1) (a); *Milton*, 232 Ga. App. at 679 (6).

conscious doing of wrong.''[25] Furthermore, without evidence that the master DVD was materially exculpatory, our decision on this point would not change even if the DVD provided McNeil with her only hope for exoneration because the bad-faith requirement of *Youngblood* still applies in such circumstances.[26]

Accordingly, for all of the foregoing reasons, we reverse the trial court's dismissal of the charges against McNeil.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 23, 2011.

*Patrick H. Head, District Attorney, Dana J. Norman, John R. Edwards, Amelia G. Pray, Assistant District Attorneys*, for appellant. *Kimberly K. Frye*, for appellee.

---

[25] *Swanson*, 248 Ga. App. 551, 552 (1) (a); *see also Fincher v. State*, 276 Ga. 480, 483-84 (5) (578 SE2d 102) (2003) ("At most, the record shows negligence in record keeping to be the cause of the failure to preserve the evidence. That being so, the trial court did not err in ruling that bad faith had not been shown."); *Walker v. State*, 264 Ga. 676, 681 (3) (449 SE2d 845) (1994) ("[T]he handling of the [evidence] may indicate careless, shoddy and unprofessional investigatory procedures, but it does not indicate that the police in bad faith attempted to deny [the defendant] access to evidence that they knew would be exculpatory.").

[26] *See Illinois v. Fisher*, 540 U. S. 544, 548 (124 SC 1200, 157 LE2d 1060) (2004) (per curiam) ("We . . . disagree that *Youngblood* does not apply whenever the contested evidence provides a defendant's 'only hope for exoneration' and is 'essential to and determinative of the outcome of the case.' " (citation and punctuation omitted)). When evidence is only *potentially* useful, bad faith must be established because the applicability of this requirement does not depend "on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." *Id.* at 549 (citation and punctuation omitted).