**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 14, 2018**

# In the Court of Appeals of Georgia

A18A0597. CEBALLOS v. THE STATE.                    DO- 020 C

DOYLE, Presiding Judge.

Following a jury trial, Gabriel Orlando Ceballos was convicted of the misdemeanor charge of giving a false name to a law enforcement officer.[1] He appeals the denial of his motion for new trial, arguing that the police officer was not in the lawful discharge of his official duties when the defendant gave him a false name and that his due process rights were violated by the State's failure to preserve exculpatory evidence. We affirm for the reasons that follow.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after

---

[1] OCGA § 16-10-25.

viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

So viewed, the record shows that on March 19, 2016, Officer J. L. Allen responded to the scene of a motorcycle accident in Gwinnett County. When he arrived, Allen saw an overturned motorcycle and a man on the ground nearby; the man, who was later identified as Jason Cruz, was still wearing his helmet and had serious injuries. Based on the placement of the motorcycle and Cruz, Allen surmised that Cruz had "lost control" in a nearby curve in the road. When he arrived, Allen also observed a second man, later identified as the defendant, "pacing back and forth," and a second helmet approximately 10 to 15 feet away from the downed motorcycle.

Other officers arrived minutes later and shut down the road, and paramedics attended to Cruz. Allen began looking for possible witnesses, approached the defendant, and asked if he knew the injured motorcyclist. The defendant, whose answers "were very short and somewhat not descriptive," stated that he saw Cruz on the ground as he was passing by the area and stopped when he realized it was his

---

[2] (Punctuation omitted.) *Smith v. State*, 294 Ga. App. 761, 761-762 (669 SE2d 735) (2008), quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt. 2781, 61 LE2d 560) (1979).

friend. Allen asked the defendant for his name, but was later unable to recall what name the defendant gave.

Officer Andrew Scott also spoke with the defendant, asked him his name, and requested that he write his date of birth and name in Scott's field notepad.[3] At the time of trial, Scott no longer had the notebook,[4] but he remembered that the last name "was too jumbled" for them to read, and they "assumed it was Gonzales or a variation of the spelling of that name." According to Allen, the last name was "almost illegible. It most certainly did not look like 'Ceballos.'. . . It looked like 'Gonzales' or something along those lines." The defendant did legibly write his correct date of birth.

The defendant told Allen that he "knew the gentleman that had wrecked on the motorcycle. He was in a different vehicle. And they arrived at a different location and

---

[3] Scott testified that although he "normally" asks for identification, he initially stated that he "[could not] recall" if he requested identification from the defendant. He then testified, however, that he asked the defendant to write down his name because he did not have any identification.

[4] When asked at trial what had happened to the notebook, Scott replied, "I couldn't tell you. . . . Lost — it got thrown away on accident. I don't know where it could be. It could be a number of different reasons — places it could be."

3

noticed that their friend was not with them. That vehicle then came looking for Mr. Cruz. And that's where they found him, [at the scene of the accident]."

The police then "kind of conclude[d] the investigation of the accident," and Cruz was transported to the hospital in an ambulance, and the defendant left the scene.[5] The police subsequently discovered a second, unaccompanied motorcycle approximately 80 to 100 yards propped against a sign in the grass. The motorcycle did not have a license plate. Allen ran the Vehicle Identification Number ("VIN") on the motorcycle through a police database; the VIN was not connected with the defendant, and the search revealed that the motorcycle did not have registered insurance. Through his continued on-scene database searches, Allen found a photograph of Ceballos connected to the motorcycle; the photograph matched the defendant. Ceballos's Class C drivers license was suspended, but Allen could not recall whether Ceballos had an active Class M or Class CM license, which would have permitted him to operate a motorcycle.

Later, DUI Task Force Officer Shawn Mycols went to the hospital where Cruz had been transported with specific instructions "to obtain as much information as

---

[5] Police did not detain the defendant, and there was no evidence that he was prohibited from leaving the accident scene.

4

possible about the person who was involved in the accident."[6] Mycols had received information from officers on the scene of the accident about a second motorcycle, and he was "trying to gather information about how this other motorcycle was involved." Mycols spent approximately 20 minutes speaking with people gathered in the emergency room in an effort "to obtain the victim's information, the motorcycle, Mr. Cruz." After going to and from his car and learning that there was another motorcycle involved that was connected to an individual named Gabriel Ceballos, Mycols asked the group if there was anyone there named Gabriel "Cal-la-bos or Cell-a-bos (phonetic)." The defendant replied, "I'm Gabriel. But I'm not that person that you're asking about." When Mycols asked him his name, the defendant replied, "Gabriel Santos."[7] Mycols did not ask the defendant any additional questions, detain him, or advise him that he was the subject of an investigation. After later searching a police database, while still at the hospital, Mycols obtained a photograph of Gabriel

---

[6] Cruz was unconscious, and Mycols was unable to speak with him.

[7] At trial, the defendant's mother and a close family friend both testified that they were at the hospital after Cruz's accident, and a police officer asked whether there was a "Gabriel Santos" present. Both women testified that the defendant responded that his name was Gabriel Ceballos, not Gabriel Santos.

5

Ceballos that matched the man in the hospital that identified himself as "Gabriel Santos." Mycols did not, however, arrest the defendant at the hospital.

The following month, on April 7, 2016, the defendant was injured when he crashed his motorcycle, which did not have a license plate. When asked for his name, the defendant identified himself as "Gabriel Ceballos," and he had identification on him with the same name.

In connection with the events of March 19, Ceballos was charged with driving with a suspended or revoked license (Count 1), operating a motor vehicle without insurance (Count 2), operating a motor vehicle without a valid license plate (Count 3), giving false information to a law enforcement officer (Count 4), and driving without a valid driver's license (Count 5). The trial court directed a verdict on Counts 1, 2, 3, and 5, and the defendant was convicted of providing false information to a police officer. The trial court denied his subsequent motion for new trial, and this appeal followed.

1. The defendant challenges the sufficiency of the evidence, arguing that Officer Mycols was not in the lawful discharge of his duties when the defendant

provided him with a false name at the hospital because the accident investigation had already concluded.[8] This enumeration is without merit.

Pursuant to OCGA § 16-10-25, a person commits the offense of giving false information to a law enforcement officer when he "gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate."

Construed in favor of the verdict, Officer Mycols went to the hospital to obtain information about the injured Cruz and about how the second motorcycle was involved. He spoke for 20 minutes with the group of people gathered at the hospital for Cruz. The officer then went to his car, returned, asked the group whether one of the people there was named Gabriel Ceballos, and according to the officer, the defendant gave a different name.

> [These] circumstances are clearly sufficient to raise an inference that [Officer Mycols] was in the discharge of his official duties, and there was nothing in the record to counter such an inference. The evidence was sufficient for a rational trier of fact to find that [the defendant] gave a false name to a law enforcement officer in the

---

[8] Count 4 alleges that the defendant gave false identity information to Mycols. The defendant was not charged with giving false information to the officers at the scene of the accident when he wrote his name in the notebook.

7

discharge of his official duties and that [he] did so with the intent of misleading the officer as to [his] identity.[9]

There is "no authority . . . for the proposition that a law enforcement officer, in order to be in the lawful discharge of his official duties, must inform anyone to whom he speaks in the course of that duty of the nature of his inquiry."[10] Thus, the evidence was sufficient to support the defendant's conviction for giving a false name to a law enforcement officer.[11]

2. The defendant contends that his "[d]ue [p]rocess rights were violated by the State's failure to preserve best evidence," referring to the officer's notebook in which the defendant wrote at the scene of the accident, which notebook the State failed to produce and could not locate at trial. We find no basis for reversal.

At trial, the defendant did not object when Officer Scott testified that he no longer had his notebook with the information the defendant wrote. Instead, after

---

[9] *Hunter v. State*, 190 Ga. App. 24, 24-25 (1) (378 SE2d 352) (1989) (affirming conviction for giving a false name to a law enforcement officer based upon evidence that a Drug Enforcement Administration agent approached the defendant at an airport, identified himself as a law enforcement officer, and asked to see her ticket, and the defendant produced a ticket that did not contain her correct name).

[10] Id. at 24 (1).

[11] See id. at 24-25 (1).

8

Scott's testimony concluded, the trial court held a bench conference at defense counsel's request. The trial court then excused the jury and gave defense counsel the opportunity to argue, explaining that "at side bar you said you have a motion concerning due process that the [c]ourt should hear right away." Defense counsel then argued that the State violated the due process clause as set forth in *Brady v. Maryland*[12] and *Arizona v. Youngblood*[13] by failing to preserve material, exculpatory evidence. The trial court mentioned the best evidence rule, and defense counsel responded that "there absolutely would be best-evidence-rule issues presented here," but then focused his argument on the due process issue, "best-evidence-rule issues aside." Defense counsel made it clear that he was not asking to strike the testimony regarding the notebook, but was instead seeking dismissal of Count 4 (providing a false name to police). The court denied the motion, explaining that it would not dismiss Count 4 until the State rested its case and then might elect to strike the testimony regarding the notebook and give a curative instruction instead and specifically noting the defendant's failure to contemporaneously object to the testimony. After the State rested, the defendant successfully moved for a directed

---

[12] 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[13] 488 U. S. 51 (109 SCt 333, 102 LE2d 281) (1988).

verdict at to Counts 1, 2, 3, and 5 (the traffic-related charges), but he did not renew any motion related to the State's failure to produce or preserve the notebook, nor did he do so after he rested.

On appeal, the defendant enumerates as error the violation of his due process rights by the State's failure to preserve best evidence, seemingly conflating two separate theories. We will address both out of an abundance of caution.

(a) *Best evidence*. Because this case was tried after January 1, 2013, Georgia new Evidence Code applies.[14] "OCGA § 24-10-1001 et seq., . . . . squarely addresses . . . the admissibility of secondary evidence of the contents of a [writing] that has been lost or destroyed."[15] OCGA § 24-10-1002 provides that "[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required." OCGA § 24-10-1004 (1), however, which provides an exception to this general rule, states that "the original shall not be required and other evidence of the

---

[14] See Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[15] (Punctuation omitted.) *Patch v. State*, 337 Ga. App. 233, 240 (2) (786 SE2d 882) (2016).

contents of a writing, recording, or photograph shall be admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."

Here, "even though [the defendant] did not specifically object to . . . [the] testimony based on our new best-evidence rule in the trial court, Georgia's new Evidence Code permits a court to take notice of 'plain errors affecting substantial rights although such errors were not brought to the attention of the [trial] court.'"[16] The Supreme Court of Georgia has adopted the four-pronged plain-error standard of review as set forth in *Puckett v. United States*[17]:

> there [first] must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously

---

[16] *Patch*, 337 Ga. App. at 241-242 (2), quoting OCGA § 24-1-103 (d) and citing *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016).

[17] 556 U. S. 129 (129 SCt 1423, 173 LE2d 266) (2009).

11

affects the fairness, integrity or public reputation of judicial proceedings.[18]

In this case, the defendant cannot satisfy the first and second prongs of the plain-error analysis because he

> is unable to show that the trial court erred [by] admitting this evidence under the new Evidence Code, much less that a legal error was "clear or obvious, rather than subject to reasonable dispute." Indeed, as previously noted, under OCGA § 24-10-1004 (1), an original recording or photograph is *not* required at trial and secondary evidence of its contents *is admissible* if "all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."[19]

Here, it is undisputed that the officer lost, misplaced, or destroyed the notebook, but "there is no evidence (and [the defendant] has not even alleged) that the State intentionally destroyed [it] in bad faith. As a result, [the] testimony regarding the

---

[18] (Punctuation omitted.) *Gates*, 298 Ga. at 327 (3), quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). See *Puckett*, 556 U. S. at 135 (II).

[19] (Punctuation omitted; emphasis in original.) *Patch*, 337 Ga. App. at 242-243 (2).

contents of the lost or destroyed [notebook] was admissible under the plain language of OCGA § 24-10-1004 (1)."[20]

(b) *Due process*. The defendant argues that the State violated his constitutional rights by failing to preserve the notebook, which he contends was exculpatory. Pretermitting whether the defendant waived this argument by failing to renew it at the close of the State's case or the evidence, it presents no basis for reversal.

"The State's duty to preserve evidence which may be exculpatory arises from the due process clause of the U. S. Constitution. A bad faith failure to preserve material evidence is a denial of due process. The issue usually arises where the State has actual physical possession of evidence and fails to preserve it."[21] Here, the defendant has not shown a due process deprivation. "'In dealing with the failure of the [S]tate to preserve evidence [that] might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted

---

[20] *Patch*, 337 Ga. at 243 (2). For the same reason, even if we construe trial counsel's argument as a specific, timely objection based on the best evidence rule, the testimony regarding the notebook was admissible under OCGA § 24-10-1004 (1).

[21] (Citation omitted.) *Fincher v. State*, 276 Ga. 480, 483 (5) (578 SE2d 102) (2003), citing *Youngblood*, 488 U. S. at 51.

13

in bad faith in failing to preserve the evidence.'"[22] As we concluded in Division 2 (a), supra, there is no evidence that police or the State "acted in bad faith in connection with the failure to preserve the evidence."[23] Thus, pretermitting whether the writings in the notebook were "constitutionally material," the defendant's due process argument is without merit.[24]

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*

---

[22] *State v. Miller*, 287 Ga. 748, 754 (699 SE2d 316) (2010), quoting *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994).

[23] *Fincher*, 276 Ga. at 484 (5).

[24] See *Fincher*, 276 Ga. at 483-484 (5); *Walker v. State*, 264 Ga. 676, 681 (3) (449 SE2d 845) (1994) ("[T]he handling of the [evidence] may indicate careless, shoddy[,] and unprofessional investigatory procedures, but it does not indicate that the police in bad faith attempted to deny [the defendant] access to evidence that they knew would be exculpatory."); *State v. McNeil*, 308 Ga. App. 633, 638 (708 SE2d 590) (2011) (holding no due process violation resulted from the State's failure to preserve the master DVD of the traffic stop because "there [was] no evidence that the master DVD was destroyed out of an interested or sinister motive or through a conscious doing of wrong") (punctuation omitted); *Swanson v. State*, 248 Ga. App. 551, 551-552 (1) (a) (545 SE2d 713) (2001) (the defendant's due process claim failed because there was "no evidence to show 'bad faith' on the part of law enforcement which resulted in the destruction of [the defendant's] blood sample") (physical precedent only).